IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JANE DOE and JOHN DOE,<br><br>*Plaintiffs*,<br><br>v.<br><br>LLOYD J. AUSTIN, III, in his official capacity as Secretary of Defense; the U.S. DEPARTMENT OF DEFENSE; the U.S. DEFENSE HEALTH AGENCY; and the TRICARE HEALTH PLAN,<br><br>*Defendants*. | Civil Action No.:<br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**PRELIMINARY STATEMENT**

1. Plaintiff Jane Doe is a 21-year-old transgender woman who has been diagnosed with gender dysphoria, a serious medical condition that requires treatment. She receives health benefits through the United States military's healthcare plan as a dependent of her father, Plaintiff John Doe, who served for more than 23 years in the Marine Corps and Air Force. Despite Jane's eligibility and her father's honorable service, Jane has been denied critical treatments recommended by her doctors solely because of a federal statute dating to 1976, 10 U.S. C. Sec. 1079 (a)(11), that mandates the categorical exclusion of all surgical treatments for gender transition in the military's medical coverage for eligible dependents of servicemembers. Plaintiffs assert claims for violation of their rights to Equal Protection (Count I) and Due Process (Count II) under the U.S. Constitution and for violation of the federal Rehabilitation Act, 29 U.S. C. § 794 (Count III).

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1361.

3. This Court is authorized to enter a declaratory judgment under 28 U.S.C. §2201.

4. An actual controversy exists between the parties involving substantial constitutional and statutory issues as Plaintiffs allege that 10 U.S.C. § 1079—and Defendants' policies, practices and actions taken in accordance with it—violate the United States Constitution and federal law and infringe on Plaintiffs' rights.

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because the acts described in this Complaint occurred in this judicial district.

## THE PARTIES

6. Plaintiff Jane Doe is a 21-year-old transgender woman who is entitled to receive healthcare benefits through the military's TRICARE Health Plan ("TRICARE"), by virtue of being an eligible dependent of her father, Plaintiff John Doe. As John Doe's dependent, Jane is eligible for TRICARE because she is enrolled in college and receives at least of 50 percent of her financial support from her father. Jane lives in Sagadahoc County, Maine.

7. Jane's father, Plaintiff John Doe, retired from the U.S. military as a Senior Master Sergeant after more than 23 years of honorable service in both the Marine Corps and Air Force. As a benefit of his honorable service, John, his wife Susan Doe, and their only child (and dependent) Jane Doe receive healthcare through the Military Health System—specifically, through TRICARE. John Doe is considered the "TRICARE Sponsor" for Jane. John lives in Sagadahoc County, Maine.

8. Defendant Lloyd J. Austin, III is the Secretary of Defense to the United States and leads the Department of Defense ("DoD"). He is authorized to establish DoD policies, to include promulgating DoD Directives and Instructions that interpret and implement enacted federal law. Pursuant to 5 U.S.C. § 702, Defendant Austin oversees the administration of TRICARE and, as such, he has a duty to ensure that TRICARE is administered properly in accordance with the Constitution and the laws of the United States. Defendant Austin maintains the ultimate authority, direction, and control over the DoD, including the TRICARE health benefits program. Defendant Austin is sued in his official capacity.

9. Defendant DoD is an agency of the United States government. DoD manages the needs of servicemembers and their families and oversees the military healthcare system.

10. Defendant Defense Health Agency ("DHA") is an executive agency within the DoD and is funded through federal defense appropriations. DHA manages and operates the TRICARE health program, which provides worldwide medical, dental, and pharmacy programs to uniformed service members, retirees, and their families. On information and belief, more than 9.6 million individuals receive healthcare through TRICARE.

11. Defendant TRICARE is the healthcare program that covers Jane and John Doe. TRICARE manages and oversees an integrated healthcare delivery system. Its director reports to and operates under the authority, direction, and control over the Director of the DHA.

## STATEMENT OF FACTS

### I. The Antiquated Statutory Exclusion of All Surgical Treatments for Gender Dysphoria in the Medical Coverage for Servicemembers' Dependents.

12. Defendant DoD is authorized by Congress to provide programs of medical and dental care for members of the uniformed services and their dependents, including through the TRICARE health program.

13. 10 U.S.C. Section 1079 ("Section 1079") specifies the medical care coverage for eligible dependents (spouses and children) of servicemembers.

14. Section 1079 (a) (11) contains a categorical exclusion of all surgeries for the treatments for gender dysphoria. The exclusionary language, in relevant part, prohibits:

> Surgery which improves physical appearance but is not expected to significantly restore functions (including mammary augmentation, face lifts, and *sex gender changes*) may not be provided…

(emphasis added).

15. DoD's implementing regulations for Section 1079 reiterate that "[a]ny procedures related to sex gender changes … are excluded." 32 C.F.R. §§ 199.4 (e)(8)(ii)(D). A separate section of DOD's implementing regulations for Section 1079 references the prohibition of "sex reassignment surgery." 32 C.F.R. §199.4 (g)(29).

16. Similarly, TRICARE Policy Manual 6010.60-M ("Policy Manual") states that while "[m]edically or psychologically necessary … and appropriate medical care may be covered for non-surgical treatment of gender dysphoria[,] [s]urgical treatment of gender dysphoria for non-active duty beneficiaries is prohibited by statute (10 USC 1079)." *Id*. at Ch. 7, § 1.2, ¶¶ 2.1-2.2 (parenthetical in original). The Policy Manual adds that "[a]ll services and supplies directly or indirectly related to surgical treatment for gender dysphoria (i.e., sex gender change), to include oophorectomy and orchiectomy," are excluded. *Id*. at ¶ 4.1 (parenthetical in original).

17. An exclusion for "sex gender changes" was first added to Section 1079 in 1976. The current statutory language dates to 1985.

18. Gender dysphoria is a serious medical condition that requires treatment. Gender transition surgeries are critical treatments for gender dysphoria and are recognized as medically necessary by scores of authoritative professional medical associations. The exclusion of surgeries

4

for "sex gender change" in Section 1079, and the grouping of procedures for "sex gender change" with such patently nonmedical procedures as a "face lifts," are remnants of the decades-old fallacy and bias that gender affirming surgeries are cosmetic, for purposes of beautification, and frivolous.

19. The Defendants provide health coverage for gender affirming surgeries for active-duty military personnel. Defendants cannot now, and never could, assert any legitimate justification for the obsolete prohibition of the identical care for dependents.

20. Upon information and belief, gender affirming surgical procedures are the only medically necessary procedures that Defendants will cover for active-duty military members but deny for their dependents.

II.    The Medical Necessity of Surgeries for Gender Transition.

21. The term "gender identity" is a well-established medical concept, referring to one's internalized, inherent sense of their own gender. For most people, gender identity is consistent with their assigned sex at birth. For transgender people, that is not the case. An individual whose gender identity is different than their assigned birth sex is transgender. A transgender man is an individual who was assigned the sex of female at birth but who has a male gender identity. A transgender woman is an individual who was assigned the sex of male at birth but who has a female gender identity.

22. If unaddressed, the incongruence between a transgender person's birth-assigned sex and one's gender identity results in gender dysphoria, a serious medical condition characterized by clinically significant and persistent distress and discomfort with one's assigned birth sex.

23. Gender dysphoria is recognized in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition; the World Health Organization's International Classification of Diseases; and by leading medical and mental health professional groups.

24. Because gender dysphoria results from an incongruence between gender identity and assigned sex at birth, a person with a diagnosis of gender dysphoria is transgender.

25. Gender dysphoria is highly treatable and can be ameliorated or cured through medical treatment. The standards of care for the treatment of gender dysphoria are set forth in the World Professional Association of Transgender Health (WPATH) *Standards of Care for the Health of Transsexual, Transgender and Gender-nonconforming People* (8th version), updated in September 2022, which are internationally recognized guidelines that have long been endorsed by authoritative professional medical and mental health organizations, including the, American Medical Association, American Psychological Association and American Psychiatric Association.

26. In accordance with the Standards of Care, transgender individuals undergo an individually tailored and medically supervised gender transition. Components of medical transition in accordance with the WPATH Standards of Care include hormone replacement therapy and surgical treatments.

27. Without treatment, individuals with gender dysphoria experience a range of debilitating psychological symptoms such as anxiety, depression, suicidality, and other attendant mental health issues.

28. People who undertake gender transition are transgender; inversely, only transgender people undergo gender transition.

29. Section 1079, the DoD implementing regulations, and the Policy Manual deny medically necessary and standard of care treatments to transgender people because they are transgender.

30. Surgeries for gender transition include any surgical procedure undergone by a transgender individual to better align their primary or secondary sex characteristics with their gender identity. Gender transition surgeries are medically necessary care in order to ameliorate the debilitation of gender dysphoria and allow transgender individuals to live, function in society and be regarded by others consistent with their gender identity.

31. Gender transition surgeries are not cosmetic procedures because they do not have the goal of enhancing beauty or appearance. Rather, healthcare experts and the positions of a wide range of authoritative professional health organizations recognize gender affirming surgeries as safe, effective and medically necessary treatments for a serious health condition. The American Medical Association, for example, has declared that "mental healthcare, hormone therapy and sex reassignment surgery … are recognized within the medical community to be the standard of care for treating people" with gender dysphoria. *See* American Medical Association. (2008). *Resolution 122 (A-08)*. The American Psychological Association has similarly emphasized that "[f]or individuals who experience such distress [from gender dysphoria] hormonal and/or surgical sex assignment may be medically necessary to alleviate significant impairment in interpersonal and/or vocational functioning…[and] recommended in clinical practice, sex reassignment surgery is almost always medically necessary, not elective or cosmetic"). *See* American Psychological Association, Task Force on Gender Identity and Gender Variance. (2009). *Report of the Task Force on Gender Identity and Gender Variance*.

### III. Jane Doe's Gender Dysphoria and the Medical Necessity of Gender Transition Surgical Treatments for Her.

32. Although assigned the sex of male at birth, Jane, who was born in 2001, has known that she is female since age 11 or 12. Like most young people whose gender identity is incongruent with their assigned sex, Jane struggled with the mental and physical effects of dysphoria, including acute anxiety, racing thoughts, a rapid heartbeat and social isolation.

33. Jane was diagnosed with gender dysphoria at age 17 in 2018.

34. Since the time of her diagnosis, Jane has been under the care of medical professionals who have recommended medically necessary treatments for her gender dysphoria in accordance with the Standards of Care.

35. Since her diagnosis with gender dysphoria, Jane has undergone psychological counseling.

36. Jane has socially transitioned to female, including using female pronouns and dressing and grooming herself in ways typically associated with females. She has legally changed her name and the gender designation on her birth certificate.

37. Jane's healthcare providers recommended that she start HRT to further her social transition and alleviate her dysphoria. Jane was referred to an endocrinologist for this treatment and began her prescribed medication of testosterone blockers and estrogen in 2018.

38. Jane continues HRT, which she likely will need for the rest of her life.

39. Defendants have not disputed Jane's gender dysphoria diagnosis and have covered the expenses of her counseling and HRT as medically necessary treatments.

40. Also in 2018 and 2019, upon the recommendation of her doctors, Jane sought coverage for medically necessary laser hair removal and electrolysis to eliminate visible male facial hair. Even though these procedures are not surgical and therefore not subject to Section

1079, Defendants improperly denied coverage for these treatments on the erroneous and unlawful basis that they are cosmetic and not medically necessary for treatment of gender dysphoria. As a result, Jane had to personally pay for these treatments.

41. In 2019 and 2021, Jane underwent facial feminization and voice feminization surgeries recommended by her doctors for her gender transition. These surgeries are standard of care treatments for gender dysphoria. Their purpose was to allow Jane to establish an authentic appearance in her gender to eliminate the debilitating symptoms of gender dysphoria that arise from male facial and vocal features.

42. Because of the categorical exclusion contained in Section 1079 and the inevitability that coverage would be denied, Jane did not seek authorization from TRICARE for these surgeries. Instead, she procured alternative health insurance through her university at her own expense.

43. Jane incurred a substantial portion of the cost of these surgeries that she would not have had to pay if they had been properly covered by her TRICARE benefits.

44. Jane subsequently sought reimbursement from TRICARE for these costs, but TRICARE denied her claim and her subsequent appeals.

45. In 2021, Jane's doctors determined that a vaginoplasty is medically necessary surgical treatment for her gender dysphoria. A vaginoplasty is a multi-stage process during which surgeons construct female genitalia.

46. Jane sought authorization through TRICARE to consult with a surgeon regarding her prescribed vaginoplasty. Defendants denied authorization for even a consultation for this gender transition surgery based solely on the categorical exclusion in Section 1079.

47. Due to the exclusion in Section 1079, and the provisions of the DoD regulations and

Policy Manual that follow it, Jane has been and continues to be unable to obtain coverage as a TRICARE beneficiary for this necessary gender transition surgery. As a result, Jane continues to suffer the effects of the serious but highly treatable condition of gender dysphoria.

48. Without the statutory exclusion in Section 1079, Jane's claims for gender-transition surgeries would be evaluated under criteria for an individualized determination of medical necessity in the same way as other claims for TRICARE medical benefits.

49. The exclusion of surgeries for "sex gender change" in Section 1079 targets people who are transgender because only people who are transgender need medical care for gender transition.

## COUNT I
### (Fifth Amendment- Equal Protection)

50. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

51. The Due Process Clause of the Fifth Amendment prohibits the federal government from denying the equal protection of the laws.

52. The exclusion of medically necessary surgeries for gender transition in Section 1079 discriminates against the plaintiff Jane Doe on the basis of her sex in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment.

53. The exclusion of medically necessary surgeries for gender transition in Section 1079 discriminates against plaintiff Jane Doe on the basis of her transgender status in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment.

54. The exclusion of medically necessary surgeries for gender transition in Section 1079 discriminates against plaintiff Jane Doe on the basis of disability in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment.

55. Section 1079, on its face and as applied to Plaintiffs, violates the Equal Protection guarantee of the Fifth Amendment to the U.S. Constitution.

## COUNT II
**(Fifth Amendment- Due Process)**

56. Plaintiffs reallege and incorporate by reference each and every allegation contained in the paragraphs 1 to 49 as if set forth fully herein.

57. The Due Process Clause of the Fifth Amendment requires, at a minimum, that government action have some rational basis.

58. The exclusion of surgeries for "sex gender change" in Section 1079, and its application and enforcement by the Defendants, are arbitrary and capricious and lack any rational basis, including because: (1) Section 1079 purports to characterize such surgeries as cosmetic, not medically necessary, and akin to a "face lift," and yet Defendants acknowledge that those very surgeries are medically necessary and not cosmetic by authorizing them for active-duty service members; (2) Defendants recognize the legitimacy of gender dysphoria as a medical condition and the WPATH Standards of Care as the basis for medically necessary treatment, but have arbitrarily and without rational or medical justification selected one type of treatment for exclusion; and (3) The application and enforcement of the exclusion of "sex gender change" surgeries in Section 1079 is solely based on the maintenance of antiquated stereotypes and fallacies about gender transition and transgender people.

59. Through the application and enforcement of the exclusion in Section 1079, Defendants have violated the Due Process Clause of the Fifth Amendment.

## COUNT III
### (Rehabilitation Act)

60. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 to 49 as if set forth fully herein.

61. The Defendants are subject to the nondiscrimination provisions of 29 U.S.C. § 794 which apply to "all DoD Components and recipients of federal financial assistance disbursed by a DoD Component insofar as the programs and activities of the DoD Components and recipients affect handicapped persons in the United States." 32 C.F.R. §§ 56.7(a), 56,7(b)(2) and 56.2(a).

62. Gender dysphoria is a disability within the scope of the Rehabilitation Act.

63. Jane Doe has gender dysphoria, which is a mental or psychological disorder within the meaning of the Rehabilitation Act because it is a serious diagnosis classified in the Diagnostic and Statistical Manual of Mental Disorders. It is also results from physical or physiological "impairments" within the meaning of the Rehabilitation Act.

64. Jane Doe's gender dysphoria substantially limits one or more of her major life activities within the meaning of the Rehabilitation Act, including reproduction and caring for one's self and the operation of the endocrine and reproductive functions.

65. The Defendants have discriminated against Jane Doe and continue to subject her to discrimination on the basis of her disability in violation of 29 U.S.C. § 794, including by the application and enforcement of the exclusion in Section 1079.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

1. Issue a declaratory judgment that the exclusion of surgeries for "sex gender change" in 10 U.S.C. Section 1079(a)(11), including the categorical exclusion of surgical treatments for gender dysphoria, is unconstitutional and violates Section 504 of the Rehabilitation Act;

2. Issue a permanent injunction prohibiting the Defendants, their agents, employees, representatives, contractors or any third party acting on their behalf from any enforcement or application of the exclusion of surgeries for "sex gender change" in 10 U.S.C. § 1079(a)(11), including surgeries for gender dysphoria, through regulations, policies or any other means, and directing Defendants to provide TRICARE coverage for Plaintiff Jane Doe's medically necessary gender affirming surgical procedures;

3. Award Plaintiffs damages in an amount to be established at trial;

4. Award Plaintiffs their reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1088 or other applicable statutes; and

5. Award any such other and further relief as this Court deems just and proper.

Dated: November 21, 2022                     Respectfully submitted,

By: __/s/ *Ethan Dowling*__
ORRICK, HERRINGTON & SUTCLIFFE LLP

Ethan Dowling (Maine Bar No. 006467)
Seth Harrington (*pro hac vice* forthcoming)
222 Berkeley Street
Suite 2000
Boston, MA 02116
T: (617) 880-1800
F: (617) 880-1801
edowling@orrick.com
sharrington@orrick.com

Shane McCammon (*pro hac vice* forthcoming)
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
T: (202) 339-8400
F: (202) 339-8500
smcammon@orrick.com

13

Matthew Moses (*pro hac vice* forthcoming)
Brittany Roehrs (*pro hac vice* forthcoming)
51 West 52nd Street
New York, NY 10019
T: (212) 506-5000
F: (212) 506-5151
mmoses@orrick.com
broehrs@orrick.com


GLBTQ LEGAL ADVOCATES &
DEFENDERS
Jennifer L. Levi (*pro hac vice* forthcoming)
jlevi@glad.org
Bennett H. Klein (*pro hac vice* forthcoming)
bklein@glad.org
18 Tremont Street
Suite 950
Boston, MA 02108
T: (617) 426-1350
F: (617) 426-3594

*Attorneys for Plaintiffs*