## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

JANE DOE and SUSAN ROE,

                 *Plaintiffs*,

      v.

LLOYD J. AUSTIN, III, in his official
capacity as Secretary of Defense; the U.S.
DEPARTMENT OF DEFENSE; the U.S.
DEFENSE HEALTH AGENCY; and the
TRICARE HEALTH PLAN,

                 *Defendants*.

Civil Action No.: 2:22-cv-00368-NT

**PLAINTIFFS' AMENDED MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS**

       Plaintiffs, through counsel, respectfully move the Court for an order allowing Jane Doe and Susan Roe to proceed under pseudonyms in this matter.

       Plaintiffs Jane Doe and Susan Roe are transgender women who have been diagnosed with gender dysphoria, a serious medical condition that requires treatment. They receive health benefits through the United States military's healthcare plan ("TRICARE") as dependents of their fathers, who are both retired servicemembers. Defendants Lloyd J. Austin, the U.S. Department of Defense, and the U.S. Defense Health Agency administer and are responsible for Defendant TRICARE Health Plan. This suit arises from Defendants' repeated denials of coverage for health benefits under TRICARE for Plaintiffs' medically necessary treatments for their gender dysphoria. Plaintiffs assert claims for violations of their rights to Equal Protection and Due Process under the U.S. Constitution and for violation of the Rehabilitation Act, 29 U.S.C. § 794.

### ARGUMENT

       The law is well-settled that parties to litigation may proceed using a pseudonym with

leave of the court—and that a district court "enjoys broad discretion to quantify the need for anonymity in the case before it." *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 72 (1st Cir. 2022). "This broad discretion extends to the court's ultimate determination as to whether that need outweighs the public's transparency interest." *Id.* In determining whether to grant a motion to proceed under a pseudonym, the Court "should balance the interests asserted by the movant in favor of privacy against the public interest in transparency, taking all relevant circumstances into account." *Id.* "In most cases, the inquiry should focus upon the extent to which the facts align with one or more" of four "paradigms":

1. "whether the case is one in which the movant reasonably fears that coming out of the shadows will cause him unusually severe physical or mental harm;"

2. "whether the case is one in which compelled disclosure of the movant's name will likely lead to disclosure of a nonparty's identity, causing the latter substantial harm;"

3. "whether the case is one in which compelled disclosure would likely deter, to an unacceptable degree, similarly situated individuals from litigating;" and

4. "whether the federal suit is bound up with a prior proceeding subject by law to confidentiality protections and forcing disclosure of the party's identity would significantly impinge upon the interests served by keeping the prior proceeding confidential."

*Id.* As detailed below, the first, second, and third paradigms are applicable here.

While there is a "strong presumption" against proceeding pseudonymously—a presumption the moving party has the burden of rebutting—federal courts, including at least two within the First Circuit, have recognized the inherently sensitive nature of one's transgender

identity and therefore have granted motions to proceed under a pseudonym brought by non-minor transgender litigants. *See*, *e.g.*, *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 72–73 (D.R.I. 1992) (granting motion in suit involving transgender-related healthcare coverage, listing other cases reaching the same result, and recognizing "the highly sensitive and personal nature of each person's sexuality" and the refusal to "strip plaintiff of the cloak of privacy which shields him"); *Doe v. Mass. Dep't of Corr.,* No. 1:17-cv-12255, 2018 WL 2994403 at *5 n.4 (D. Mass. Jun. 14, 2018) (noting court previously granted transgender inmate's motion to proceed pseudonymously); *see also Doe v. Pa. Dep't of Corr.,* 585 F. Supp. 3d 797 (W.D. Pa. 2022) (granting non-binary inmate's motion due to reasonable fear of severe harm and invasions of privacy, and finding anonymity would not materially impair public's right); *Doe v. Genesis Healthcare*, 535 F. Supp. 3d 335, 340 (E.D. Pa. 2021) (granting motion in employment dispute as plaintiff had kept transgender status confidential and faced threat of future harm; requiring disclosure would significantly deter similarly situated plaintiffs from litigating similar claims); *Meriwether v. Trs. of Shawnee State Univ.,* No. 1:18-cv-753, 2019 WL 2392958 at *4 (S.D. Ohio Jan. 30, 2019) (granting motion because "the information Doe seeks to protect is 'of the utmost intimacy' and … there continues to be a serious social stigma associated with transgender identity with the potential for harmful repercussions"); *Doe v. Trump*, No. 1:17-cv-1597, Dkt. 3 (D.D.C. Aug. 10, 2017) (granting transgender military members' motion); *Bd. of Educ. of the Highland Local School District v. U.S. Dep't of Educ.*, No. 2:16-cv-524, 2016 WL 4269080, at *5 (S.D. Ohio Aug. 15, 2016) (granting motion and listing cases allowing "non-minor transgender plaintiffs to proceed anonymously due to the social stigma associated with their gender identity.").

In short, Plaintiffs should not be required to expose themselves to vitriol and scrutiny in

order to vindicate their legal right to receive medically necessary healthcare. This is particularly true here, as the balance between Plaintiffs' privacy interests far outweigh the public's interest in transparency.

**I.**   ***Plaintiffs reasonably fear disclosure of their identities will cause them "unusually severe physical or mental harm."***

The stigma associated with transgender status means that public association with this lawsuit could subject Plaintiffs to substantial harassment, severe mental harm, and even physical violence. Plaintiffs each identify as women and present femininely in all aspects of their lives, including their dress, appearance, and speech. Due to the threat of harassment and violence faced by transgender individuals, neither Jane nor Susan openly discloses to others that they are transgender, and instead share this information only with a small circle of family, close friends, and their medical professionals (and as required by law). *See* Declaration of Jane Doe ("Doe Decl..") at ¶ 8; Declaration of Susan Roe ("Roe Decl.") at ¶ 9. Susan is in the process of choosing a name that reflects her female gender identity. Roe Decl. at ¶ 8. Jane has legally changed her name and her gender marker on various government documents, and exclusively uses female pronouns, in part to reduce the potential for harassment and violence should others learn she is transgender. Doe Decl. at ¶ 6. This fear has been exacerbated by the recent public discourse over transgender issues, which has become emotionally charged—and, in many cases, vitriolic—in Maine, Florida, and elsewhere. Doe Decl. at ¶ 9; Roe Decl. at ¶ 10. As the Maine State Advisory Committee to the U.S. Commission on Civil Rights reported in 2020, "the climate and tone of discourse in Maine contributes to the continued targeting of LGBTQ persons in the state[,]" such as when "KKK flyers were circulated in the state, calling for an attack on transgender people." *See Advisory Memorandum*, Maine State Committee to the U.S. Commission on Civil Rights (April 2020), https://www.usccr.gov/files/2020/2020-06-18-Maine-

Hate-Crimes-Advisory-Memo.pdf.

In addition to Plaintiffs' desire to protect themselves from danger, their claims necessarily involve the intimate, sensitive, and intensely private medical procedures and treatments prescribed by their doctors. Plaintiffs have an acute interest in keeping this information private. *See Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. at 74 ("As a transsexual, plaintiff's privacy interest is both precious and fragile, and this Court will not cavalierly permit its invasion."). As alleged in the Complaint, Jane has obtained some of these highly sensitive procedures at her own expense after Defendant TRICARE denied her requests for treatment. Moreover, like many people diagnosed with gender dysphoria, Jane has experienced a range of debilitating psychological symptoms, such as anxiety, depression, and other attendant mental health issues. Susan similarly has struggled with her mental health as she comes to understand and accept her gender identity. Roe Decl. at ¶ 7. Plaintiffs already have had to disclose much of this sensitive mental-health information in their Complaint. It would be psychologically devastating to Plaintiffs if this information were to be publicly linked to their real names, to say nothing of the potential deleterious impact it could have on their respective educational pursuits and their ability to find employment in their desired fields. *See* Doe Decl. at ¶ 10; Roe Decl. at ¶ 11.

## II.   ***Compelled disclosure will likely lead to disclosure of non-parties' identities, causing them substantial harm.***

Just as Jane Doe and Susan Roe reasonably fear disclosure of their true names will lead to physical and mental harm, so too do other members of their family—particularly Jane's mother, Jill Doe, and Susan's father, John Roe. Due to the Plaintiffs' uncommon surnames, the disclosure of their identities likely will lead to disclosure of the identity of Jill Doe and John Roe, both of whom are non-parties.

Should Jill Doe or John Roe's identities be involuntarily disclosed, they would face the same substantial harms that warrant the granting of this motion. They would be subjected to the potential for mental injury and even physical violence, as well as deleterious effects on their careers, if their identities were disclosed. Not only is this reasonable fear a harm in and of itself, but cisgender Mainers and Floridians are not immune from suffering from the same harassment and violence that their transgender loved ones experience. Recognizing the impact that involuntary disclosure of a spouse's transgender identity can have on cisgender family members, Maine recently passed L.D. 1900, which removes the requirement that proposed name changes be publicly noticed in local newspapers—a requirement that outed many transgender Mainers and their families. *See* Esta Pratt-Kielley, "Public notices of name changes 'outed' many transgender Mainers. A new law will change that," *Maine Public* (Apr. 20, 2022), https://www.mainepublic.org/politics/2022-04-20/public-notices-of-name-changes-outed-many-transgender-mainers-a-new-law-will-change-that (recounting experience of cisgender woman who "lost clients who were transphobic or homophobic" after her transgender spouse was required by law to publish proposed name change in a local newspaper). This Court can similarly protect non-parties like Jill Doe and John Roe by allowing their daughters to proceed under pseudonyms.

**III.**     ***Compelled disclosure would likely deter, to an unacceptable degree, similarly situated individuals from litigating.***

As the First Circuit recently explained, district courts "must be wary of 'deter[ring] the legitimate exercise of the right to seek a peaceful redress of grievances through judicial means.'" *Doe v. Mass. Inst. of Tech.*, 46 F.4th at 71 (quoting *Talamini v. Allstate Ins. Co.*, 470 U.S. 1067, 1070-71, (1985) (Stevens, J., concurring) and citing *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 532 (2002)) (grammatical alterations in original). "A deterrence concern typically arises in cases

6

involving 'intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors.'" *Id.* (quoting *In re Sealed Case*, 971 F.3d 324, 327 (D.C. Cir. 2020)).

This case—and, more generally, cases involving transgender identity and the need for medical intervention to treat gender dysphoria for non-minors—implicates all but one of the "intimate issues" the First Circuit identified as creating a deterrence concern: sexual activities, reproductive rights, bodily autonomy, and medical concerns. *See id.* Plaintiffs' fear of being outed in the process of vindicating their rights under the U.S. Constitution and the Rehabilitation Act—and having their medical diagnoses and treatments, their need for bodily autonomy, and their sexual and reproductive desires laid bare—is so palpable that they would have to consider dropping their claims against Defendants should this motion be denied. *See* Doe Decl. at ¶ 11; Roe Decl. at ¶ 12. Plaintiffs surely would not be alone in having to weigh their desire to vindicate their constitutional rights against the danger of being publicly exposed. It would take an exceptionally risk-averse plaintiff to publicly proceed in a case like this, given the vitriolic public discourse over transgender issues, the documented incidents of transgender individuals being victimized in hate crimes, and the exposure to additional anguish not already caused by gender dysphoria. These factors deter, to an unacceptable degree, individuals similarly situated to Plaintiffs from litigating.

**IV.**   ***The public's interest in transparency is limited because Defendants are all government entities or officials, none of whom will be disadvantaged by Plaintiffs' request.***

While not specifically addressed by the First Circuit in *Doe v. Mass. Inst. of Tech.*, the fact that each Defendant in this action is either a government entity or official weighs in favor of leave to proceed under a pseudonym. *See, e.g., E.W. v. N.Y. Blood. Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) ("[W]here a plaintiff attacks governmental activity … the plaintiff's interest in

proceeding anonymously is considered particularly strong."). This is because the plaintiff "presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights," while "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant." *Id.*; *see also Doe v. U.S. Dep't of State*, No. 1:15-cv-01971, 2015 WL 9647660, at *3 (D.D.C. Nov. 3, 2015). As such, the fact that Plaintiffs here sue only governmental defendants weighs in favor of allowing them to proceed using pseudonyms.

Moreover, Plaintiffs are willing to disclose their names to Defendants (under seal). There is no risk, therefore, that Defendants will be unfairly prejudiced in any manner by Plaintiffs being allowed to proceed pseudonymously. Defendants will be able to proceed in the same manner in this action as they would were Plaintiffs to file under their own names. Defendants, meanwhile, would not benefit in any way from the public disclosure of Plaintiffs' identities— other than potentially (and improperly) deterring Plaintiffs from proceeding with their claims.

## CONCLUSION

In short, if forced to litigate this case using their real names, Plaintiffs (and their relatives) would face almost certain harassment from peers and members of the public, exposure to the risk of severe mental and physical harm, and the exposure to the risk of having highly sensitive medical and intimate information publicly disclosed. Conversely, by pursing this case under pseudonyms, Plaintiffs would be able to vindicate their constitutional rights in Court without detracting from Defendants' ability to litigate this case or from the public's ability to appreciate the issues at stake.

For the foregoing reasons, Plaintiffs respectfully request that their Motion to Proceed Under Pseudonyms be granted.

Dated: January 27, 2023               Respectfully submitted,

By:   /s/ *Ethan Dowling*             
        ORRICK, HERRINGTON & SUTCLIFFE LLP

Ethan Dowling (Maine Bar No. 006467)
Seth Harrington (*pro hac vice* forthcoming)
222 Berkeley Street, Suite 2000
Boston, MA 02116
T: (617) 880-1800
F: (617) 880-1801
edowling@orrick.com
sharrington@orrick.com

Shane McCammon (*pro hac vice* forthcoming)
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
T: (202) 339-8400
F: (202) 339-8500
smcammon@orrick.com

Matthew Moses (*pro hac vice* forthcoming)
Brittany Roehrs (*pro hac vice* forthcoming)
51 West 52nd Street
New York, NY 10019
T: (212) 506-5000
F: (212) 506-5151
mmoses@orrick.com
broehrs@orrick.com

GLBTQ LEGAL ADVOCATES & DEFENDERS
Bennett H. Klein (*pro hac vice* forthcoming)
18 Tremont Street, Suite 950
Boston, MA 02108
T: (617) 426-1350
F: (617) 426-3594
bklein@glad.org

*Attorneys for Plaintiffs*