IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JANE DOE and SUSAN ROE,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>LLOYD J. AUSTIN, III, in his official capacity as Secretary of Defense; the U.S. DEPARTMENT OF DEFENSE; the U.S. DEFENSE HEALTH AGENCY; and the TRICARE HEALTH PLAN,<br><br>    *Defendants*. | Civil Action No.: 2-22-cv-00368-NT |

## THE PARTIES' STIPULATION OF FACTS

Plaintiffs Jane Doe and Susan Roe (collectively, the "Plaintiffs") and Defendants Lloyd J. Austin, III, in his official capacity as Secretary of Defense, the U.S. Department of Defense, the Defense Health Agency, and the TRICARE Health Plan (collectively, the "Defendants") stipulate to the following facts:

    1.    Defendant Defense Health Agency (DHA) is an executive agency within the federal Department of Defense.

    2.    DHA is funded through federal appropriations.

    3.    DHA manages and operates the TRICARE health program.

    4.    The TRICARE health program provides worldwide medical, dental, and pharmacy programs to uniformed service members, retirees, and their families.

    5.    More than 9.6 million individuals receive healthcare through TRICARE.

    6.    DHA is responsible for managing the TRICARE program, including the

promulgation of regulations and policies that define the scope of TRICARE benefits and coverage.

7. Defendant Department of Defense is an agency of the United States government.

8. The Department of Defense oversees the military healthcare system, including the activities and policies of the DHA.

9. Defendant Lloyd Austin is the Secretary of Defense to the United States and leads the Department of Defense.

10. The term "gender identity" is a well-established medical concept referring to a person's internalized, inherent sense of their own gender.

11. Every person has a gender identity.

12. Transgender people are those who have a gender identity that is not fully aligned with their sex assigned at birth.

13. A transgender man is an individual who was classified female at birth but who has a male gender identity.

14. A transgender woman is an individual who was classified male at birth but who has a female gender identity.

15. A person's gender identity is innate, impervious to external influences, and cannot be changed by medical or psychological intervention.

16. Taking steps to facilitate living consistent with one's gender identity may be medically necessary to the health and well-being of a transgender person.

17. If unaddressed, the incongruence between a transgender person's sex assigned at birth and one's gender identity can result in gender dysphoria.

18. According to the American Psychiatric Association's Diagnostic & Statistical Manual of Mental Disorders (DSM-V), an authoritative source for psychiatric conditions, gender

dysphoria is the term for the health condition experienced by a transgender person who has clinically significant distress or impairments in functioning resulting from the lack of congruence between their gender identity and sex classified at birth.

19. As the DSM-V explains, to be diagnosed with gender dysphoria, the individual must experience the incongruence for at least six months and experience clinically significant distress or impairment in social, occupational, or other areas of functioning.

20. Gender dysphoria can be a serious medical condition that may require medical treatment.

21. Medical treatment for gender dysphoria is intended to address the clinically significant distress or impairment in functioning created by gender dysphoria by helping people who are transgender live in alignment with their gender identity.

22. Because gender dysphoria results from an incongruence between gender identity and a person's birth sex, a person with a diagnosis of gender dysphoria is transgender.

23. The prevailing standards of care for the treatment of gender dysphoria are set forth in evidence-based guidelines published by well-established medical organizations, including the World Professional Association of Transgender Health (WPATH) and the Endocrine Society. The WPATH *Standards of Care for the Health of Transgender and Gender-Diverse People* (8th version) have been recognized by certain organizations, including the American Medical Association and the Endocrine Society, as representing the consensus of the medical and mental health community regarding the appropriate treatment for gender dysphoria.

24. In accordance with the WPATH Standards of Care, treatment for transgender individuals is individually tailored and medically supervised.

25. Gender transition is the term for the process a transgender person goes through to

live consistent with their gender identity.

26. The precise treatment or medical interventions for gender dysphoria depends on an individual's needs.

27. According to both the WPATH Standards of Care and the Endocrine Society, the number and type of interventions to treat gender dysphoria may differ from person to person.

28. Hormone replacement therapy is one component of medical treatment for gender dysphoria that is medically necessary for some individuals based on their individual needs and treatment plan.

29. Surgical treatments for gender transition are a component of medical treatment for gender dysphoria that are medically necessary for some individuals based on the particular circumstances of that individual.

30. Surgeries for gender transition may include certain surgical procedures undergone by a transgender individual to better align their body with their gender identity.

31. Gender transition surgeries may be medically necessary for a particular patient depending on the circumstances of the patient and an appropriate physician's determination of the treatment required.

32. Genital reconstruction surgeries such as penectomy (removal of the penis), orchiectomy (removal of the testes), vaginoplasty, clitoroplasty, or vulvoplasty (surgical construction of female genitalia), are gender transition surgeries for transgender women that may be medically necessary for a particular patient with gender dysphoria depending on the circumstances of the patient and an appropriate physician's determination of the treatment required.

33. Facial feminization surgeries that are for the purpose of modifying and aligning

facial characteristics commonly associated with males to characteristics commonly associated with females are a component of gender transition surgeries that may be medically necessary for a particular patient with gender dysphoria depending on the circumstances of the patient and an appropriate physician's determination of the treatment required.

34. Chest reconstruction surgeries, such as augmentation mammoplasty (breast implants), are a component of gender transition surgeries for transgender women that may be medically necessary for a particular patient with gender dysphoria depending on the circumstances of the patient and an appropriate physician's determination of the treatment required.

35. Chest reconstruction surgery such as the creation of a male chest is a component of gender transition surgeries for transgender men that may be medically necessary for a particular patient with gender dysphoria depending on the circumstances of the patient and an appropriate physician's determination of the treatment required.

36. Genital surgeries such as hysterectomy/oophorectomy, reconstruction of the urethra, metoidioplasty, phalloplasty, or vaginectomy are a component of gender transition surgeries for transgender men that may be medically necessary for a particular patient with gender dysphoria depending on the circumstances of the patient and an appropriate physician's determination of the treatment required.

37. For some transgender individuals with gender dysphoria, the clinically significant distress resulting from the incongruence between their gender identity and sex classified at birth cannot be treated without one or more gender transition surgeries.

38. While some transgender individuals are able to achieve comfort with their gender identity without surgery, surgery may be medically necessary to alleviate gender dysphoria for others.

39. For some transgender individuals, gender transition surgeries are medically necessary to treat impairments in social, occupational, or other important areas of functioning resulting from that person's gender dysphoria.

40. For transgender individuals for whom surgery is medically necessary to treat gender dysphoria, delays in obtaining medically necessary gender transition surgeries may increase or worsen impairments in social, occupational, or other important areas of functioning for that particular individual.

41. Defendants provide health coverage for gender transition surgeries for active-duty military personnel.

42. People who undergo gender transition are transgender.

43. Only transgender people undergo gender transition.

Dated: December 12, 2023

Respectfully submitted,

By:   */s/ Kayla Grant*_____
ORRICK, HERRINGTON, & SUTCLIFFE LLP

Kayla Grant (Maine Bar No. 006711)
Shane McCammon
1152 15th Street, N.W.
Washington, D.C. 20005-1706
T: (202) 339-8400
F: (202) 339-8500
kgrant@orrick.com
smcammon@orrick.com

Seth Harrington
222 Berkeley Street
Suite 2000
Boston, MA 02116
T: (617) 880-1800
F: (617) 880-1801
sharrington@orrick.com

By: */s/* Bennett H. Klein
GLBTQ LEGAL ADVOCATES & DEFENDERS
Bennett H. Klein
bklein@glad.org
18 Tremont Street
Suite 950
Boston, MA 02108
T: (617) 426-1350
F: (617) 426-3594

*Counsel for Plaintiffs*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

JOSHUA E. GARDNER
Special Counsel

By: */s/* Lee Reeves
EMILY B. NESTLER (D.C. Bar #973886)
LEE REEVES
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005

*Counsel for Defendants*