## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JANE DOE and SUSAN ROE,<br><br>*Plaintiffs*,<br><br>v.<br><br>LLOYD J. AUSTIN, III, in his official capacity as Secretary of Defense; the U.S. DEPARTMENT OF DEFENSE; the U.S. DEFENSE HEALTH AGENCY; and the TRICARE HEALTH PLAN,<br><br>*Defendants*. | Civil Action No.: 2:22-cv-00368-NT |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 56, Local Rule 56, and the Court's Local Rule 56(h) Order, Doc. 29, Defendants Lloyd J. Austin, in his official capacity as Secretary of Defense; the United States Department of Defense; the United States Defense Health Agency; and the TRICARE Health Plan ("Defendants" or "DoD") respectfully oppose Plaintiffs Jane Doe and Susan Roe's ("Plaintiffs") Motion for Summary Judgment, Doc. 36, and cross-move for summary judgment on Count I of Plaintiffs' Amended Complaint, Doc. 5.[1]  The grounds for Defendants' motion are set forth in the incorporated Memorandum of Law and are supported by the Parties' Stipulation of Facts, Doc. 34-1, and Defendants' Opposing Statement of Material Facts and Supporting Statement of Material Facts, Doc. 45.

---

[1] Plaintiffs voluntarily dismissed Counts II and III of their Amended Complaint via stipulation, leaving Count I as the lone remaining claim in this case.  *See* Doc. 38.

## INTRODUCTION

This case challenges a provision of a federal law that defines the scope of health care services available to the dependents of active duty and former servicemembers under TRICARE, the United States military's health care program.  Plaintiffs Jane Doe and Susan Roe are transgender women who seek coverage for surgery to treat gender dysphoria.  Both assert that they are eligible to enroll in TRICARE as dependents of former servicemembers, and both have stated their intentions to seek TRICARE coverage for the additional gender transition surgeries they plan to undergo.  Plaintiffs contend, however, that such coverage for their surgeries is barred by TRICARE's statutory exclusion for "[s]urgery which improves physical appearance but is not expected to significantly restore functions (including mammary augmentation, face lifts, and sex gender changes)."  10 U.S.C. § 1079(a)(11).  And they claim that this exclusion violates the Fifth Amendment's equal protection guarantee because it discriminates on the basis of sex and transgender status, both facially and as applied.

Plaintiffs chose to challenge only the constitutionality of a portion of a single statutory provision, without directly challenging the underlying regulatory regime through which the statute is implemented.  That choice has legal implications that require the dismissal of this action.  As a threshold matter, Plaintiffs lack standing.  Because Plaintiffs focus solely on TRICARE's exclusion for "sex gender change" surgery, they do not acknowledge that the coverage they seek would be independently precluded by a separate regulation that they do not challenge, and that is not gender-based.  TRICARE separately excludes coverage for "[s]urgery performed primarily for psychological reasons," 32 C.F.R. § 199.4(g)(25) (2023), which encompasses the surgeries to treat gender dysphoria sought by Plaintiffs.  *See, e.g.*, Parties' Stipulation of Facts ¶ 18; Doc. 34-1, # 136–37 (providing the definition of "gender dysphoria" from "an authoritative source for

2

*psychiatric conditions*" (emphasis added)).  Prior to summary judgment briefing, Defendants alerted Plaintiffs to the existence of this regulation.  Plaintiffs decided to persist in their challenge to 10 U.S.C. § 1079(a)(11), but did not address the regulation in their brief.  Nor do they contend that this separate regulatory exclusion is unconstitutional.  The exclusion applies broadly to cover all psychological conditions, and thus does not distinguish based on sex or any other suspect classification.  Because Plaintiffs' surgeries would not be eligible for TRICARE coverage even if Plaintiffs were to prevail in this case, their asserted injury is not redressable here, and their claim should be dismissed on that basis alone.

Even if this case were to proceed on the merits, summary judgment should be granted for Defendants.  First, Plaintiffs' facial challenge to 10 U.S.C. § 1079(a)(11) cannot succeed because, on Plaintiffs' own reading, the statute is subject to a constitutional interpretation.  Plaintiffs argue that § 1079(a)(11)'s "plain language . . . does not exclude" from TRICARE coverage "gender transition surgeries that are medically necessary to treat gender dysphoria" because such surgeries "significantly restore functions."  Pls.' Mot. for Summ. J. 7; Doc. 36, # 257.  Because Plaintiffs concede that the statute's text permits this construction, and that this construction passes constitutional muster, their facial challenge fails as a matter of law.  *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) ("[A] plaintiff can only succeed in a facial challenge by establishing . . . that the law is unconstitutional in all of its applications." (cleaned up)).

Second, Plaintiffs' "as-applied" challenge to § 1079(a)(11) is effectively a complaint about the Department of Defense's "interpretation" of the statute, which Plaintiffs argue "creates a categorical exclusion" to TRICARE coverage for all gender transition surgeries.  Pls.' Mot. for Summ. J. 13; Doc. 36, # 263.  But this argument is beyond the scope of the claim that is before the

Court.  Indeed, in their Amended Complaint, Plaintiffs do not directly challenge the legality of any specific regulatory provision interpreting or implementing § 1079(a)(11), having elected instead to challenge only the statute.  *See* Am. Compl. ¶ 63; Doc. 5, # 48 ("*Section 1079*, on its face and as applied to Plaintiffs, violates the Equal Protection guarantee of the Fifth Amendment to the U.S. Constitution." (emphasis added)).  Under these circumstances, the Court is "obliged to read" Plaintiffs' complaint "narrowly" and to resolve the sole issue that is squarely before it—that is, whether § 1079(a)(11) itself necessarily violates the Constitution's equal protection guarantee (it does not).  *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 836 F.3d 57, 62 (D.C. Cir. 2016); *see id.* ("This case does not permit us to decide whether [a regulation] is constitutionally sound, for [the plaintiff] has elected to challenge only the statute."); *cf. Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

Accordingly, summary judgment should be granted for Defendants.

## BACKGROUND

### I.   STATUTORY AND REGULATORY BACKGROUND

TRICARE is the program through which the Department of Defense provides health care benefits and services to active duty servicemembers, military retirees, and their family members. Parties' Stipulation of Facts ("Stip.") ¶ 4; Doc. 34-1, #135; *see* 10 U.S.C. § 1072(7) (defining "TRICARE program").  More than 9.6 million beneficiaries receive health care through TRICARE, Stip. ¶ 5; Doc. 34-1, # 135, with nearly 60 percent of that figure consisting of retired servicemembers and their dependents.[2]  *See* 10 U.S.C. § 1072(2) (defining who qualifies as a

---

[2] *See* Bryce H. P. Mendez, *Defense Primer: Military Health System*, Congressional Research Service (Nov. 18, 2022), https://crsreports.congress.gov/product/pdf/IF/IF10530/12.

"dependent" of "a member or former member of a uniformed service"). The Secretary of Defense is responsible for "administering the TRICARE program and making any decision affecting such program." 10 U.S.C. § 1073(a)(2); *see* Stip. ¶¶ 7–8; Doc. 34-1, # 136. Since 2013, TRICARE has been managed by the Defense Health Agency, an agency within DoD.[3] Stip. ¶¶ 1, 3, 6; Doc. 34-1, # 135–36.

DoD has the authority to provide military retirees and the dependents of both active duty and retired servicemembers with health insurance-like plans that help cover the costs of health care services delivered by civilian providers.[4] *See* 10 U.S.C. §§ 1079(a), 1086(a). Congress has spelled out the "types of health care" that can be covered under these TRICARE plans, *id.* § 1079(a), which range from "[h]ospitalization" and the "[t]reatment of medical and surgical conditions" to "[d]iagnostic tests and services" and "[p]rosthetic devices," *id.* § 1077(a); *see id.* § 1076(a)–(b). Congress has also decided to exclude certain services and procedures from this same TRICARE plan coverage.[5] As a general matter, for instance, no "service or supply" may be covered unless it is "medically or psychologically necessary to prevent, diagnose, or treat a mental or physical illness, injury, or bodily malfunction as assessed or diagnosed by" a health care professional. *Id.*

---

[3] *See* U.S. Dep't of Defense, Directive No. 5136.13, *Defense Health Agency* (Sept. 30, 2013), https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodd/513613p.pdf (establishing the Defense Health Agency and tasking it with "[m]anag[ing] TRICARE" and "integrating health care delivery under the direct care and private sector care components of the Military Health System").

[4] These same beneficiaries are also eligible to receive "medical and dental care in any facility of any uniformed service, subject to the availability of space and facilities and the capabilities of the medical and dental staff." 10 U.S.C. § 1074(b)(1); *see id.* § 1076(a)–(b).

[5] The scope of "TRICARE coverage" discussed throughout the remainder of Defendants' brief refers specifically to the scope of coverage available to former servicemembers, their dependents, and the dependents of active duty servicemembers. Coverage for active duty servicemembers is subject to different parameters.

§ 1079(a)(12).  Federal law also expressly precludes coverage for certain types of treatment.  For example, dependents of retired servicemembers may not receive coverage for eye examinations or (with a limited exception) treatments for eating disorders, *id.* § 1086(a); dependents of both retired and active duty servicemembers may not be reimbursed for, among other things, "[t]herapy or counseling for sexual dysfunctions or sexual inadequacies" or "[t]reatment of obesity," *id.* § 1079(a)(9)–(10).  And, as relevant in this case, TRICARE coverage is not available for:

> Surgery which improves physical appearance but is not expected to significantly restore functions (including mammary augmentation, face lifts, and sex gender changes) . . . , except that—
> (A) breast reconstructive surgery following a mastectomy may be provided;
> (B) reconstructive surgery to correct serious deformities caused by congenital anomalies or accidental injuries may be provided; and
> (C) neoplastic surgery may be provided.

*Id.* § 1079(a)(11).

DoD's implementing regulations further clarify which medical services and treatments are eligible for TRICARE coverage.  *See* 32 C.F.R. § 199.4.  For example, the regulations list in detail the various hospital services, physician-provided services, medical supplies, and pharmaceutical benefits for which TRICARE reimbursement may be sought.  *See id.* § 199.4(b)(2), (c)(2), (d)(3)(iii), (d)(3)(vi).  These range from anesthesia, dialysis, surgery, and physical therapy, *id.* § 199.4(b)(2)(viii), (b)(2)(xi), (b)(2)(xvi), (c)(2)(i); to ambulance trips, stays in an intensive care unit, and inpatient treatment for "a nervous or mental disorder," *id.* § 199.4(b)(2)(iii), (b)(6), (d)(3)(v); to prescription drugs, cardiorespiratory monitors, "disposable syringes for a known diabetic," and checkups for children under six, *id.* § 199.4(c)(3)(xi), (d)(3)(ii)(B), (d)(3)(iii)(A), (d)(3)(vi).  The regulations also "specifically . . . exclude[]" from TRICARE coverage a list of nearly 70 different categories of health conditions and services.  *Id.* § 199.4(g).  To highlight just a few examples, the regulations exclude coverage for stress management counseling, treatment for

dyslexia, "unproven" medical drugs, and services otherwise covered by Medicare. *Id.* § 199.4(g)(15), (17), (32), (39). And, most relevant for purposes of this case, the list also excludes coverage for "[s]urgery performed primarily for psychological reasons (such as psychogenic)," *id.* § 199.4(g)(25), and "[s]ervices and supplies related to sex gender change, also referred to as sex reassignment surgery, as prohibited by [§] 1079," *id.* § 199.4(g)(29).[6]

Another section of the regulations, entitled "Special benefit information," separately discusses "certain circumstances, conditions, or limitations that impact the extension of benefits and that require special emphasis and explanation." *Id.* § 199.4(e)(1). That section delineates, among other things, the scope of coverage available for family planning, eyeglasses and contact lenses, and hospice care for terminally ill patients. *See id.* § 199.4(e)(3), (6), (19). The same section also states that TRICARE benefits "generally are not available for cosmetic, reconstructive, or plastic surgery," which the regulations define as "surgery that can be expected primarily to improve physical appearance or that is performed primarily for psychological purposes or that restores form, but does not correct or improve materially a bodily function." *Id.* § 199.4(e)(8). This subsection further provides a list of "[g]eneral exclusions" that it encompasses, which includes "[c]osmetic, reconstructive, or plastic surgery procedures performed primarily for

---

[6] TRICARE's implementing regulations only exclude coverage for "sex gender change" *surgery*. *See* 32 C.F.R. § 199.4(g)(29) (encompassing "[s]ervices and supplies related to . . . sex reassignment surgery"); *see also* 10 U.S.C. § 1079(a)(11) (excluding coverage for "[s]urgery which improves physical appearance but is not expected to significantly restore functions"). TRICARE coverage is otherwise available for non-surgical treatments for gender dysphoria that are medically necessary. *See, e.g.*, Am. Compl. ¶ 39; Doc. 5, # 44 ("Defendants . . . have covered the expenses of [Plaintiff Doe's] counseling and [hormone replacement therapy] as medically necessary treatments."); Defs.' Answer ¶ 39; Doc. 19, # 101 ("Defendants admit that they previously provided coverage for [Plaintiff Doe's] counseling and [hormone replacement therapy] . . . ."); *see also* Defs.' Opposing Statement of Material Facts ¶ 20.

psychological reasons or as a result of the aging process," as well as "[a]ny procedures related to sex gender changes." *Id.* § 199.4(e)(8)(ii)(B), (D).[7]

## II.   PLAINTIFFS' CHALLENGE TO 10 U.S.C. § 1079(a)(11)

Plaintiffs Jane Doe and Susan Roe are both transgender women who seek coverage for surgery to treat gender dysphoria. *See* Am. Compl. ¶ 1; Doc. 5, # 37.  Plaintiffs assert that they are the children of retired servicemembers and are therefore eligible for TRICARE coverage as dependents. *See id.*  Plaintiff Doe asserts that she was diagnosed with gender dysphoria in 2018 at the age of 17. *Id.* ¶ 33; # 44.  Since then, she has received psychological counseling and hormone replacement therapy, the expenses for which have been covered by TRICARE. *Id.* ¶¶ 35, 37–39; # 44; *see* Defs.' Answer ¶ 39; Doc. 19, # 101.  Plaintiff Doe asserts that between 2019 and 2021, she underwent facial and voice feminization surgeries that her doctors deemed medically necessary to treat her gender dysphoria. Am. Compl. ¶ 41; Doc. 5, # 45.  Plaintiff Doe also asserts that in July 2023, she underwent a vaginoplasty surgery that was likewise considered a medically necessary treatment. Doe Decl. ¶ 9; Doc. 34-4, # 246.  TRICARE did not cover any of these surgeries. *Id.* ¶¶ 8–9; # 246–47; *see* Am. Compl. ¶¶ 44, 46; Doc. 5, # 45.  According to Plaintiff Doe, treatment for her gender dysphoria is ongoing, and she intends to "utilize TRICARE coverage" for any additional gender transition surgeries she will need in the future.  Doe Decl. ¶¶ 10–11; Doc. 34-4, # 247.

Plaintiff Roe asserts that she was diagnosed with gender dysphoria in 2022 and began hormone replacement therapy that same year. Am. Compl. ¶¶ 49, 52; Doc. 5, # 46.  Plaintiff Roe

---

[7] The "sex gender change[]" exclusion in 32 C.F.R. § 199.4(e)(8)(ii)(D) is subject to a narrow exception for "surgery . . . performed to correct sex gender confusion/intersex conditions (that is, ambiguous genitalia) which has been documented to be present at birth," *id.* § 199.4(g)(29), which is not implicated here.

also asserts that she underwent facial feminization surgery in August 2023, which her doctors deemed medically necessary to treat her gender dysphoria, but she was not enrolled in TRICARE at the time. Roe Decl. ¶ 10; Doc. 34-5, # 249. According to Roe, she "will need further surgeries as medically necessary treatment for [her] gender dysphoria," and she likewise plans to "utilize TRICARE coverage" for those future surgeries. *Id.* ¶¶ 11–12; # 249.

Plaintiffs brought this lawsuit in November 2022 and filed the operative Amended Complaint two months later. *See* Docs. 1, 5. In their Amended Complaint, Plaintiffs allege that "10 U.S.C. [§] 1079(a)(11) . . . mandates the categorical exclusion" from TRICARE coverage "of all surgical treatments for gender transition . . . for eligible dependents of servicemembers," and that "[t]he exclusion of surgeries for 'sex gender change' in [§] 1079 targets people who are transgender." Am. Compl. ¶¶ 1, 57; Doc. 5, # 37, 47. Plaintiffs' sole remaining claim is that "[§] 1079, on its face and as applied to Plaintiffs, violates the Equal Protection guarantee of the Fifth Amendment" by discriminating against Plaintiffs "on the basis of their sex" and "transgender status" (Count I).[8] *Id.* ¶¶ 60–61, 63; # 47–48. Plaintiffs' prayer for relief seeks: (1) a declaratory judgment that "the exclusion of surgeries for 'sex gender change' in 10 U.S.C. [§] 1079(a)(11) . . . is unconstitutional," and (2) a permanent injunction "prohibiting" DoD from enforcing "the exclusion of surgeries for 'sex gender change' in 10 U.S.C. § 1079(a)(11) . . . through regulations, policies or any other means" and "directing" DoD "to

---

[8] Plaintiffs originally asserted two other causes of action in their Amended Complaint: (1) that DoD's "enforcement of" § 1079's "exclusion of surgeries for 'sex gender change'" violates due process (Count II), and (2) that DoD's enforcement of the same statutory exclusion violates the Rehabilitation Act, 29 U.S.C. § 794 (Count III). Am. Compl. ¶¶ 64–73; Doc. 5, # 48–49. But Plaintiffs voluntarily dismissed Counts II and III, along with their claim for damages, on December 21, 2023. *See* Doc. 38.

provide TRICARE coverage for [Plaintiffs'] medically necessary gender affirming surgical procedures."  *Id.* 13–14; # 49–50.

On December 21, 2023, Plaintiffs filed a motion for summary judgment on their remaining equal protection claim.  *See* Docs. 36, 38.

## LEGAL STANDARD

Summary judgment is warranted if the moving party "shows that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply 'require [a court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.'"  *Wells Real Estate Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E.*, 615 F.3d 45, 51 (1st Cir. 2010) (quoting *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001)).  Claims are particularly suitable for resolution at summary judgment where "no material facts are in dispute and disposition is dependent only on" questions of law.  *Pizzuti v. Polaroid Corp.*, 985 F.2d 13, 14 (1st Cir. 1993).

## ARGUMENT

Plaintiffs' only remaining claim in this case is that 10 U.S.C. § 1079(a)(11) violates the Fifth Amendment's equal protection guarantee both "on its face and as applied to Plaintiffs."[9]  Am. Compl. ¶ 63; Doc. 5, # 48.  More specifically, Plaintiffs contend that the statute categorically excludes "medically necessary surgeries for the treatment of gender dysphoria" from TRICARE

---

[9] As Plaintiffs note, because they challenge a federal statute, their "right to equal protection is grounded in the Due Process Clause of the Fifth Amendment," but the analytical approach to such a claim is "precisely the same as to equal protection claims under the Fourteenth Amendment." *United States v. Blewitt*, 920 F.3d 118, 123 (1st Cir. 2019) (quoting *Carrasco v. Sec'y of Health, Educ., & Welfare*, 628 F.2d 624, 628 n.5 (1st Cir. 1980)).

coverage, and that this amounts to unconstitutional discrimination on the basis of sex and transgender status.  Mot. for Summ. J. 2; Doc. 36, # 252; *see* Am. Compl. ¶¶ 60–61; Doc. 5, # 47.

But Plaintiffs' case suffers from a fundamental jurisdictional flaw.  Their asserted injury—namely, that TRICARE's "sex gender change" exclusion bars coverage for any surgeries Plaintiffs will undergo to treat their gender dysphoria—would not be redressed by resolution of their claim.  This is because, even if Plaintiffs were to succeed on their challenge to the "sex gender change" exclusion, coverage would be foreclosed by a separate TRICARE exclusion that is not at issue here.  Plaintiffs therefore lack standing, and that deficiency alone warrants summary judgment in Defendants' favor.

Even if this case were to proceed on the merits, summary judgment should be granted for Defendants.  Plaintiffs' facial challenge to § 1079(a)(11) fails as a matter of law because, even under Plaintiffs' theory, the statute can be construed in a way that raises no constitutional concerns.  And Plaintiffs' "as-applied" challenge to § 1079(a)(11) fails because it implicates regulatory provisions that are not challenged in Plaintiffs' Amended Complaint and thus should not be considered by the Court.

## I.     Plaintiffs Lack Standing Because Their Asserted Injury Would Not Be Redressed By Their Requested Relief.

"Article III requires a plaintiff to show that she has suffered an injury in fact that is 'fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'"  *Haaland v. Brackeen*, 599 U.S. 255, 291–92 (2023) (quoting *California v. Texas*, 593 U.S. 659, 669 (2021)); *see Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) ("The heartland of constitutional standing is composed of the familiar amalgam of injury in fact, causation, and redressability.").  Because Plaintiffs have failed to establish any injury that would be redressed by the relief sought in this case, they cannot "pass" this essential "test," *Haaland*, 599

U.S. at 292, and summary judgment should therefore be granted for Defendants. *See, e.g.*, *McDonough v. City of Portland*, 855 F.3d 452, 452 (1st Cir. 2017).

Plaintiffs' asserted injury is the anticipated denial of TRICARE coverage for additional surgeries they plan to undergo to treat their gender dysphoria. *See, e.g.*, Pls.' Statement of Undisputed Facts ¶ 21; Doc. 37, # 298 ("[T]he continuing exclusion in [§] 1079(a)(11) remains a complete barrier to coverage for any additional surgeries [Plaintiff Doe] will need."); *id.* ¶ 29; #299 ("The exclusion of gender transition surgeries in TRICARE health benefits coverage is a complete barrier to coverage for the additional gender transition surgeries that Susan Roe needs."). Plaintiffs' theory is that their asserted injury is caused by DoD's reliance on § 1079(a)(11) to exclude "sex gender change" surgeries from TRICARE coverage. *See* Pls.' Mot for Summ. J. 2; Doc. 36, # 252 ("The Defendants rely on [§] 1079(a)(11) to categorically exclude coverage of medically necessary surgeries for the treatment of gender dysphoria . . . ."). To redress their injury, Plaintiffs ask the Court to declare the statutory exclusion for "sex gender change" surgeries unconstitutional, Am. Compl. 13; Doc. 5, # 49, or to at least interpret that exclusion to preclude coverage only for those surgeries that are "exclusively for cosmetic purposes," Pls.' Mot. for Summ. J. 7; Doc. 36, # 257.  Plaintiffs also ask the Court to permanently enjoin DoD from enforcing the "sex gender change" exclusion "through regulations, policies or any other means."[10] Am. Compl. 14; Doc. 5, # 50.

---

[10] Rather than challenging § 1079(a)(11) in its entirety, Plaintiffs ask the Court to declare only the statute's "exclusion of surgeries for 'sex gender change'" unconstitutional and to enjoin only that specific provision. Am. Comp. 13–14; Doc. 5, # 49–50; *see* Pls.' Mot. for Summ. J. 16; Doc. 36, # 266 ("In the end, the ban on 'sex gender changes' in [§] 1079(a)(11) cannot survive any level of constitutional scrutiny . . . .").

But Plaintiffs fail to acknowledge that the TRICARE coverage they seek would be independently precluded by a separate regulatory provision that they have not even mentioned, much less challenged, in this case.  Specifically, the TRICARE regulations expressly exclude from coverage "[s]urgery performed primarily for psychological reasons (such as psychogenic)."  32 C.F.R. § 199.4(g)(25).[11]  Because Plaintiffs seek gender transition surgery to treat their gender dysphoria, and because gender dysphoria is a psychological condition, this separate "psychological reasons" exclusion presents an independent bar to TRICARE coverage for Plaintiffs.  In other words, even if Plaintiffs were to receive a "favorable resolution" of their challenge to § 1079(a)(11)'s "sex gender change" provision, their asserted injury would still go unredressed.  *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012).  Under these circumstances, Plaintiffs lack an essential element of standing.  *See id.* at 71 ("[A] plaintiff must establish each part of a familiar triad: injury, causation, and redressability."); *see also Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 49 (1st Cir. 2020) ("[Plaintiff] has not demonstrated that its injury would be alleviated by the relief the district court could have provided in this case and has thus failed to show redressability.").

The applicability of TRICARE's separate exclusion for surgery to treat "psychological" conditions is confirmed by the undisputed facts in the record.  The stipulated summary judgment record makes clear that gender dysphoria is principally a "psychiatric condition[]."  Stip. ¶ 18; Doc. 34-1, # 136–37 (providing the definition of "gender dysphoria" in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-V)); *see id.* ¶¶ 21–22;

---

[11] While 32 C.F.R. § 199.4(g)(25) is sufficient on its own to preclude the TRICARE coverage Plaintiffs seek in this case, it bears mentioning that a separate section of the TRICARE regulations excludes "[c]osmetic, reconstructive, or plastic surgery procedures performed primarily for psychological reasons."  32 C.F.R. § 199.4(e)(8)(ii)(B).

Doc. 34-1, # 137 (explaining that gender dysphoria "results from an incongruence between" a person's "gender identity and . . . birth sex" and is characterized by "clinically significant distress or impairment in functioning"); *see also* Aff. of Randi Ettner, Ph.D ¶ 1; Doc. 34-3, Doc. # 215 ("I am a licensed clinical and forensic *psychologist* with a specialization in the diagnosis, treatment, and management of individuals with gender dysphoria." (emphasis added)).  Surgeries to treat gender dysphoria are thus, by definition, "performed primarily for psychological reasons."  32 C.F.R. § 199.4(g)(25).  Accordingly, there is no genuine dispute of material fact about whether the separate "psychological reasons" exclusion in the TRICARE implementing regulations, *see id.*, would bar coverage for the gender transition surgeries that Plaintiffs plan to undergo.

There also is no basis to doubt the constitutionality of the "psychological reasons" exclusion.  As a threshold matter, Plaintiffs make no mention of this separate exclusion in their Amended Complaint or in their summary judgment briefing—despite Defendants having alerted them to its existence before the latter briefing was filed—let alone contest the exclusion's applicability to surgeries for gender dysphoria.  *See TransUnion LLC v. Ramirez* 594 U.S. 413, 430–31 (2021) ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing.").  "It is thus clear that" the "psychological reasons" exclusion is "beyond the scope of" Plaintiffs' constitutional challenge to § 1079(a)(11) and thus a provision whose legality the Court should not assess.  *Rothe Dev., Inc.*, 836 F.3d at 62; *cf. Matal v. Tam*, 582 U.S. 218, 231 (2017) ("[W]e ought not to pass on questions of constitutionality unless such adjudication is unavoidable." (cleaned up)).  And, in any event, the "psychological reasons" exclusion does not classify TRICARE beneficiaries based on sex or any other constitutionally suspect lines.

Nor can the constitutional concerns Plaintiffs raise with respect to § 1079(a)(11)'s exclusion for "sex gender change" surgeries somehow be imputed to this independent provision of law. *See California*, 593 U.S. at 679–80 (concluding that plaintiffs lacked standing in part because their injury in fact was traceable to statutory provisions that "operate[d] independently of" the specific provision plaintiffs were challenging). Put another way, "[t]o show that § 1079(a)(11)'s exclusion for "sex gender change" surgeries "is unconstitutional," as Plaintiffs attempt to do here, "would not show that enforcement of" the separate regulatory exclusion for surgeries "performed primarily for psychological reasons" also "violates the Constitution." *California*, 593 U.S. at 679.

In sum, because TRICARE's separate and unchallenged "psychological reasons" exclusion operates as an independent bar to coverage for Plaintiffs' gender dysphoria surgeries, a declaration that § 1079(a)(11)'s exclusion for "sex gender change" surgeries is unconstitutional "would do nothing to help" Plaintiffs in this case. *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 465 (D.C. Cir. 2018) (concluding that a plaintiff "ha[d] a serious standing problem" because invalidating the agency directive he was challenging would have "do[ne] nothing to help" his "plight as long as" as separate statute "remain[ed] good law"); *see Haaland*, 599 U.S. at 293 (finding no standing where the requested declaratory judgment would have been "powerless to remedy the alleged harm"). For the same reason, Plaintiffs' requested injunction would likewise "have no chance of redressing" their asserted injury. *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023); *see id.* ("We conclude that the plaintiffs lack standing to pursue such relief . . . ."). Any effort by the Court to resolve the merits of Plaintiffs' remaining equal protection claim would thus effectively amount to issuing "an advisory opinion without the possibility of any judicial relief." *California*, 593 U.S. at 673 (quoting *Los Angeles v. Lyons*, 461

U.S. 95, 129 (1983) (Marshall, J., dissenting)); *cf. Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 150 (1st Cir. 2002) ("[I]f the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest.").

Accordingly, Plaintiffs lack standing because their asserted injury is not redressable by their requested relief.  Summary judgment should be granted for Defendants on that basis, and the Court "need go no further."  *Katz*, 672 F.3d at 81; *see Equal Means Equal v. Ferriero*, 3 F.4th 24, 31 (1st Cir. 2021) ("To be fit for adjudication in federal court, however, [federal constitutional questions] must be raised in a suit that satisfies the requirements of Article III.").

## II.    Plaintiffs' Remaining Constitutional Challenge Fails as a Matter of Law.

Even if the Court were to find that Plaintiffs have standing, their constitutional challenge to § 1079(a)(11) still fails as a matter of law.  Plaintiffs cannot prevail on their facial challenge to § 1079(a)(11) because, even under Plaintiffs' theory, the statute is subject to a constitutional construction.  As for their "as-applied" challenge to § 1079(a)(11), Plaintiffs object to DoD's "interpretation" of the statute, but they have brought only a claim challenging the statute's constitutionality and have not directly challenged any particular regulatory implementation. Plaintiffs must be held to their decisions on how to frame their case; because not even they believe that § 1079(a)(11) necessarily violates equal protection principles, there is no occasion for this Court to go further.

### A.    Plaintiffs' Position That 10 U.S.C. § 1079(a)(11) Can Be Construed to Allow Coverage for Medically Necessary Gender Transition Surgery Defeats Their Facial Constitutional Challenge.

Plaintiffs allege in their Amended Complaint that § 1079(a)(11) violates the Fifth Amendment's equal protection guarantee "on its face" by categorically excluding from TRICARE coverage "medically necessary surgeries for gender transition."  Am. Compl. ¶¶ 58–63; Doc. 5,

# 47–48.  Such a facial challenge "is an attack on [the] statute itself as opposed to a particular application."  *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015); *see John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (explaining that a plaintiff must "satisfy . . . [the] standards for a facial challenge" when his claim and "the relief that would follow . . . reach beyond the [plaintiff's] particular circumstances").  "To succeed in a typical facial attack," a plaintiff must establish "that no set of circumstances exists under which" the challenged statute "would be valid," or that the statute "lacks any plainly legitimate sweep."  *United States v. Stevens*, 559 U.S. 460, 472 (2010) (cleaned up) (citations omitted).  But Plaintiffs' position is just the opposite—that § 1079(a)(11) *can* be construed to allow coverage for medically necessary gender transition surgery.  *See* Pls.' Mot. for Summ. J. 6–13; Doc. 36, # 256–263.  Indeed, Plaintiffs' position is that the statute's plain language can *only* be construed in a manner that does not categorically exclude gender transition surgery from coverage, but rather allows for coverage when the gender transition surgery in question is medically necessary—and thus one that will "restore" the patient's psychiatric "function[ing]," 10 U.S.C. § 1079(a)(11).  *See* Pls.' Mot. for Summ. J. 7; Doc. 36, # 257.  And as Plaintiffs acknowledge, the gender-neutral construction they offer does not raise any constitutional concerns.  *See id.* 14; # 264 (asserting only that "a categorical ban on *all* gender transition surgeries" would "violate[] equal protection"); *see also Wash. State Grange*, 552 U.S. at 449 (explaining that "a plaintiff can only succeed in a facial challenge" by showing that a challenged statute "is unconstitutional in *all* of its applications" (emphasis added)).[12]

---

[12] The Court need not decide whether the construction of § 1079(a)(11) advanced by Plaintiffs is the only available construction of the statutory text to the exclusion of other constructions.  Rather, the fact that Plaintiffs themselves concede that the statute is susceptible to a constitutional construction is enough on its own to defeat Plaintiffs' facial challenge here.  *See Stevens*, 559 U.S. at 472 (explaining that a successful facial attack requires demonstrating that a statute "lacks any plainly legitimate sweep" (cleaned up)).

Because Plaintiffs concede that § 1079(a)(11) is subject to a construction that has a "plainly legitimate sweep," their facial constitutional challenge to the statute must necessarily fail. *Stevens*, 559 U.S. at 472 (cleaned up) (citation omitted); *see Wash. State Grange*, 552 U.S. at 457 (concluding that the Court's determination that certain "implementations" of a challenged statute "would be consistent with" the Constitution was "fatal to respondents' facial challenge").

**B.      Because Plaintiffs Have Challenged Only § 1079(a)(11), the Court Should Not Reach the Question of Whether Defendants' Regulations are Constitutional.**

Because Plaintiffs' arguments show that § 1079(a)(11) is not facially unconstitutional, what remains is Plaintiffs' "as-applied" challenge to the statute. *See* Am. Compl. ¶ 63; Doc. 5, # 48. That challenge effectively amounts to a complaint about DoD's "interpretation of [§] 1079(a)(11)," which, according to Plaintiffs, "creates a categorical exclusion of coverage for gender transition surgeries" that violates the Constitution's equal protection guarantee. Pls.' Mot. for Summ. J. 13–14; Doc. 36, # 263–64. As explained above, Plaintiffs' position is that § 1079(a)(11)'s text can (and should) be interpreted so as not to exclude from TRICARE coverage gender transition surgeries that "significantly restore functions," including psychiatric functions. Under their theory, any categorical exclusion of *all* gender transition surgeries does not flow from § 1079(a)(11) itself.

To the extent that such a categorical exclusion flows from regulations that interpret and implement § 1079(a)(11), the Court need not—and should not—reach the issue of those regulations' constitutionality. Plaintiffs have not directly challenged any of Defendants' regulations, having elected instead to challenge only the statute. *See* Pls.' Mot. for Summ. J. 2; Doc. 36, # 252 ("This case is a challenge to *10 U.S.C. [§] 1079(a)(11)* . . . ." (emphasis added)). That distinction matters here. "A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng*, 485 U.S. at 445. And "[i]f there [is] any doubt" about which specific provisions of

18

law are implicated by a plaintiff's constitutional claim, a court "would be obliged to read" the plaintiff's complaint "narrowly" if doing so would help avoid needlessly raising a constitutional problem. *Rothe Dev., Inc.*, 836 F.3d at 62; *see Sony BMG Music Ent. v. Tenenbaum*, 660 F.3d 487, 511 (1st Cir. 2011) (admonishing the district court for "thrust[ing] the case into a thicket of constitutional issues it was not necessary to enter").

In this case, Plaintiffs have brought an equal protection challenge against § 1079(a)(11) exclusively. Am. Compl. ¶ 63; Doc. 5, # 48. Yet they agree that § 1079(a)(11) can be interpreted to "not exclude gender transition surgeries that are medically necessary to treat gender dysphoria," and they further acknowledge that under that interpretation, any equal protection concerns would fall away. Pls.' Mot. for Summ. J. 7, 13–14; Doc. 36, # 257, 263–64. Under these circumstances then, the Court can resolve Plaintiffs' claim on the narrow grounds presented—that is, whether § 1079(a)(11) categorically excludes gender transition surgery from TRICARE coverage— without having to resolve any complicated equal protection issues. *See Victim Rights Law Ctr. v. Rosenfelt*, 988 F.3d 556, 563 (1st Cir. 2021) ("Courts are obliged to avoid rulings on constitutional issues when non-constitutional grounds will suffice to resolve an issue."); *cf. Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150, 178–79 (1st Cir. 2021) ("We are satisfied that the relief available under the APA adequately addresses [the plaintiff's] remedial requests and that, hence, resolving . . . [additional] constitutional questions would be inconsistent with our obligation to avoid doing so where a non-constitutional disposition is possible.").

The D.C. Circuit's decision in *Rothe Development, Inc. v. U.S. Department of Defense*, 836 F.3d 57 (D.C. 2016), is instructive. The "central question" in *Rothe* was whether a federal statute that facilitated the award of government contracts to small businesses owned by "socially and economically disadvantaged" individuals imposed a racial classification that "warrant[ed] strict

judicial scrutiny." 836 F.3d at 61, 63. The D.C. Circuit acknowledged that a Small Business Administration regulation implementing the statute did, in fact, "contain a racial classification in the form of a presumption that an individual who is a member of one of five designated racial groups . . . is socially disadvantaged." *Id.* at 62. But the court concluded that the specific claims before it "d[id] not permit [it] to decide whether the race-based regulatory presumption [was] constitutionally sound" because the plaintiff "ha[d] elected to challenge only" the statute's constitutionality. *Id.*; *see id.* ("It is thus clear that the regulations are beyond the scope of [the plaintiff's] challenge."). And the *Rothe* court further observed that "[i]f there were any doubt" to the contrary, it was nonetheless "obliged" to read the plaintiff's complaint "narrowly to reach the same conclusion" so as to avoid raising an equal protection problem. *Id.*

The Court should take a similar path here. Because Plaintiffs' Amended Complaint directly challenges only § 1079(a)(11)'s exclusion for "sex gender change" surgeries, and because the legal analysis in Plaintiffs' summary judgment briefing is likewise limited to § 1079(a)(11) alone, "[t]his case does not permit" the Court to determine whether other unchallenged provisions of law are "constitutionally sound." *Rothe Dev., Inc.*, 836 F.3d at 62; *see Lyng*, 485 U.S. at 445. And because Plaintiffs concede that § 1079(a)(11) itself does not necessarily impose a categorical exclusion for gender transition surgeries, their remaining challenge to the statute fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be denied, and summary judgment should be granted for Defendants.

Dated: February 16, 2024        Respectfully submitted,

                                      BRIAN M. BOYNTON
                                      Principal Deputy Assistant Attorney General
                                      Civil Division

EMILY B. NESTLER
Assistant Director
Civil Division

By: */s/ Zachary W. Sherwood*
ZACHARY W. SHERWOOD
Trial Attorney (Indiana Bar No. 37147-49)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
zachary.w.sherwood@usdoj.gov
(202) 616-8467

*Counsel for Defendants*