IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JANE DOE and SUSAN ROE,<br><br>*Plaintiffs*,<br><br>v.<br><br>LLOYD J. AUSTIN, III, in his official capacity as Secretary of Defense; the U.S. DEPARTMENT OF DEFENSE; the U.S. DEFENSE HEALTH AGENCY; and the TRICARE HEALTH PLAN,<br><br>*Defendants*. | Civil Action No.: 2:22-cv-00368-NT |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 7(c) and the Court's Local Rule 56(h) Order, Doc. 29, Defendants Lloyd J. Austin, in his official capacity as Secretary of Defense; the United States Department of Defense; the United States Defense Health Agency; and the TRICARE Health Plan ("Defendants" or "DoD") respectfully submit this reply in support of their cross-motion for summary judgment ("Defendants' Cross-Motion"), Doc. 44.

**INTRODUCTION**

Plaintiffs concede that this case is limited in scope. As Plaintiffs themselves describe it, "[t]his case is a challenge to a federal statute" and nothing more. Pls.' Opp'n & Reply ("Opposition") 1; Doc. 49; # 350. That statute, 10 U.S.C. § 1079(a)(11), excludes TRICARE coverage for "[s]urgery which improves physical appearance but is not expected to significantly restore functions (including mammary augmentation, face lifts, and sex gender changes)," which Plaintiffs concede may be construed in a way that raises no constitutional concerns—i.e., to allow

1

coverage for medically necessary surgeries to treat gender dysphoria because such surgeries "significantly restore functions." Pls.' Mot. for Summ. J. 7; Doc. 36, # 257. Plaintiffs' concession alone warrants summary judgment for Defendants.

But the Court need not and should not reach the merits of Plaintiffs' challenge to § 1079(a)(11) because Plaintiffs lack standing. As explained in Defendants' Cross-Motion, Plaintiffs face an independent bar to coverage under a separate regulation that excludes coverage for "[s]urgery performed primarily for psychological reasons," 32 C.F.R. § 199.4(g)(25), which is nowhere challenged in this case. Because the surgeries Plaintiffs wish to undergo would not be eligible for TRICARE coverage even if they were to prevail in this case, their asserted injury is not redressable here.

Plaintiffs do not dispute that they lack standing if the "psychological reasons" exclusion applies, but rather devote the bulk of their Opposition to arguing that the exclusion does not encompass surgery to treat gender dysphoria at all. Plaintiffs first argue that gender dysphoria is not actually a psychological condition, contrary to both their own experts' testimony and the American Psychiatric Association's Diagnostic & Statistical Manual of Mental Disorders ("DSM-5"). Alternatively, they urge a limiting construction of the exclusion that is contrary to the plain text of TRICARE's regulatory scheme and based on immaterial aspects of the scheme's regulatory history. Accordingly, because Plaintiffs lack standing and their statutory challenge also fails on the merits, summary judgment should be granted for Defendants.

## ARGUMENT

**I.  Plaintiffs Lack Standing Because the "Psychological Reasons" Exclusion Imposes an Independent Bar to Coverage.**

As detailed in Defendants' Cross-Motion, Plaintiffs lack standing because the TRICARE coverage they seek would be independently precluded by a separate regulatory provision that is

2

not challenged in this case—specifically, the exclusion for "[s]urgery performed primarily for psychological reasons (such as psychogenic)," 32 C.F.R. § 199.4(g)(25). *See* Defs.' Cross-Motion 11–16; Doc. 44, # 319–324.

In their Opposition, Plaintiffs do not dispute that they would, in fact, lack standing if the "psychological reasons" exclusion applies. Nor could they, since this separate exclusion would independently bar the TRICARE coverage Plaintiffs seek regardless of whether they succeed in their challenge against 10 U.S.C. § 1079(a)(11), which renders their claimed injury in this case irredressable. *See Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023).

Unable to refute this central point, Plaintiffs argue instead that the "psychological reasons" exclusion does not apply because (1) surgery to treat gender dysphoria does not treat a "psychological" condition; (2) such surgery does not fall within the exclusion's scope because it is neither cosmetic nor psychogenic; and (3) a 2016 amendment to different provisions of TRICARE's regulatory scheme undermines the exclusion's applicability here. Each of these arguments lacks merit.

### A. Gender Dysphoria is Properly Considered a Psychological Condition.

The stipulated summary judgment record establishes that no party materially disputes that gender dysphoria is a psychological condition. *See* Defs.' Cross-Motion 13–14; Doc. 44, # 321–22. As recognized by Plaintiffs' own expert, the "critical element" that distinguishes a transgender individual diagnosed with gender dysphoria from other transgender individuals is the presence of "clinically significant and persistent distress and discomfort with one's birth sex." Ettner Aff. ¶¶ 7, 10; Doc. 34-3, # 217–18; *see id.* ¶ 10 (explaining that "gender incongruence, in and of itself, does not constitute a mental disorder" and that a gender dysphoria diagnosis "is based on the distress or *dysphoria* that some transgender people experience as a result of the incongruence between birth

3

sex and gender identity"); *see also* Parties' Stipulation of Facts ("Stip.") ¶¶ 21–22 (explaining that gender dysphoria is characterized by "clinically significant distress or impairment in functioning"). This description is consistent with the DSM-5, "an authoritative source for psychiatric conditions," Stip. ¶ 18; Doc. 34-1, # 136, which states that gender dysphoria "is associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning." Ettner Aff. ¶ 13; Doc. 34-3, # 219 (listing the DSM-5's "diagnostic criteria" for gender dysphoria). In light of the undisputed fact that clinically significant distress is a hallmark of gender dysphoria, the condition is reasonably considered a psychological one.

In response, Plaintiffs argue for the first time that gender dysphoria should not be considered a psychological condition at all, and they support that argument with a new expert affidavit that appears to contradict prior statements made in that same expert's initial report. *Compare, e.g.*, Ettner Aff. ¶ 10; Doc. 34-3, # 218 (acknowledging that, per the DSM-5, "[t]he critical element of Gender Dysphoria is the presence of clinically significant distress associated with the condition"), *with* Supp. Ettner Aff. ¶ 2; Doc. 48-1, # 345 ("The defining feature of the medical condition gender dysphoria is physical differentiation resulting from [a] neurodevelopmental anatomical anomaly, commonly referred to as gender congruence."). As a threshold matter, Plaintiffs' new expert opinions are not properly before the Court. *See Klinges v. Pomerlau*, No. 2:19-cv-418, 2022 WL 1487036, at *5 (D. Me. May 11, 2022) (Torresen, J.) (noting that a supplemental expert designation comports with Fed. R. Civ. P. 26(e) only if it "correct[s] inaccuracies" or "fill[s] the interstices of an incomplete report based on information *that was not available at the time of the initial disclosure*" (emphasis added)). Even though Plaintiffs were on notice about the "psychological reasons" exclusion before summary judgment briefing commenced, they never sought to supplement their expert disclosures in relation to that issue until

4

now.[1]  *See id.* at *6 (granting a motion to strike a supplemental expert designation in part because the designation "was *not* based on any information that wasn't already available . . . at the time of the original designation").  Under these circumstances, and for the reasons set forth in Defendants' Reply Statement of Material Facts filed contemporaneously here, Plaintiffs' new expert disclosures are improper and untimely and thus should not be considered.  *See* Fed. R. Civ. P. 37(c)(1).

In any event, Plaintiffs' new arguments cannot be squared with the undisputed facts in the record, which are sufficient to warrant summary judgment for Defendants on this issue.  The crux of Plaintiffs' argument is that "[t]here is no recognized or effective psychiatric or psychological treatment for gender dysphoria," and that the "reason" for surgery to treat gender dysphoria is to "treat the physiological cause" of the condition.  Pls.' Opp'n & Reply 10; Doc. 49, # 359.  Yet as Plaintiffs' experts have already rightly acknowledged, "effective treatment options for gender dysphoria include *mental health care*."  Schechter Aff. ¶ 17; Doc. 34-2, # 147 (emphasis added); *see* Ettner Aff. ¶ 20; # 222–23 (explaining that the "Standards of Care" for treating gender dysphoria include "[p]sychotherapy" in addition to other potential medical interventions); *see also* Am. Compl. ¶ 35; Doc. 5, # 44 ("Since her diagnosis with gender dysphoria, [Plaintiff Doe] has undergone psychological counseling.").  Indeed, one of Plaintiffs' experts is a "licensed clinical

---

[1] The Court's Scheduling Order required Plaintiffs to "designate" their expert witnesses and to "provide a complete statement of all opinions to be expressed [by those witnesses] and the basis and reasons therefor" by August 25, 2023.  Doc. 20, # 107.  Plaintiffs disclosed expert reports from Loren S. Schechter, M.D., and Randi Ettner, Ph.D, by that deadline, and those same reports were included in the Stipulated Summary Judgment Record that was filed on December 13, 2023.  *See* Docs. 34-2, 34-3.  Defendants had already alerted Plaintiffs by then of their intention to rely on the "psychological reasons" exclusion, but Plaintiffs did not seek to supplement their expert disclosures at that time.  *See* Fed. R. Civ. P. 26(e)(1).  They instead waited to supplement those disclosures until after both parties had already moved for summary judgment.  The Court's Local Rule 56(h) Order permits the parties to "file a supplemental record" if needed, Doc. 29, # 121, but any such supplement must still comply with the Federal Rules.  *See* Fed. R. Civ. P. 1, 83(a)(1).

and forensic *psychologist*" who has "evaluated, diagnosed, and *treated* over 3,000 individuals with gender dysphoria." Ettner Aff. ¶¶ 1–2; Doc. 34-3, # 215 (emphasis added). As for the "reason" for surgery to treat gender dysphoria, Plaintiffs' expert testimony also establishes that one of the "critical" aims of such surgery is to "ensur[e] that" those who undergo it "can live safely and comfortably in their gender *free of the distress and impairments in functioning*" that are inherent to a gender dysphoria diagnosis. *Id.* ¶ 36; Doc. 34-3, # 231 (emphasis added); *see* Schechter Aff. ¶ 17; Doc. 34-2, # 148 ("[E]vidence shows . . . that for many transgender people surgery is essential and medically necessary to *alleviate their dysphoria* . . . ." (emphasis added)).

Plaintiffs also emphasize that "a significant body of scientific and medical research" indicates that gender dysphoria "has a physiological and biological etiology," Supp. Ettner Aff. ¶ 1; Doc. 48-1, # 345, related to "hormonal factors in utero that create a differentiation between a person's immutable, brain-based gender identity and their anatomy," Pls.' Opp'n & Reply 4; Doc. 49, # 353. But the fact that gender dysphoria may have biological or "brain-based" origins in no way precludes it from being a psychological condition. Depression, for instance, is widely believed to be caused by low levels of serotonin, a neurotransmitter.[2] Yet no one would dispute that depression is a psychological condition. Gender dysphoria—a "medical condition characterized by clinically significant and persistent distress," Ettner Aff. ¶ 7; Doc. 34-3, # 217— is no different. Like depression, it can be caused by biological factors yet still be a psychological condition.

Finally, Plaintiffs argue that because some conditions listed in the DSM-5 "do not have a psychological or emotional etiology," it does not follow that "simply because a condition is listed

---

[2] *See, e.g.*, Nat'l Insts. of Health, *Information about Mental Illness and the Brain* (2007), https://www.ncbi.nlm.nih.gov/books/NBK20369/; *see id.* ("Most scientists believe that mental illnesses result from problems with the communication between neurons in the brain . . . .").

in the DSM-5 that treatment for it is necessarily for psychological reasons." Pls.' Opp'n & Reply 9; Doc. 49, # 358. But this is beside the point. Gender dysphoria is not a psychological condition *because* it is in the DSM-5. Rather, the point is that gender dysphoria is a psychological condition because, as recognized in the DSM-5, it is defined by "clinically significant distress," which is a view that has been endorsed by Plaintiffs' own expert. Ettner Aff. ¶¶ 7, 10; Doc. 34-3, # 217–18.

### B. The Plain Language of the "Psychological Reasons" Exclusion Encompasses Surgery to Treat Gender Dysphoria.

The text of 32 C.F.R. § 199.4(g)(25) is clear: TRICARE does not cover "[s]urgery performed primarily for psychological reasons (such as psychogenic)." Nonetheless, Plaintiffs urge the Court to adopt a limiting construction of the exclusion, so that surgery to treat gender dysphoria would fall outside its scope entirely. Plaintiffs' theories are inconsistent with the regulatory text and thus fail as a matter of law.

First, Plaintiffs contend that the "psychological reasons" exclusion merely "pertains to the general prohibition" of TRICARE coverage for "cosmetic procedures," thus rendering it inapplicable to non-cosmetic—*i.e.*, medically necessary—gender transition surgeries. Pls.' Opp'n & Reply 5; Doc. 49, # 354. To make this argument, Plaintiffs rely on a separate section of the TRICARE implementing regulations that expressly addresses "cosmetic, reconstructive, or plastic surgery." *See* 32 C.F.R. § 199.4(e)(8)(i) (providing that TRICARE coverage "generally [is] not available" for such surgery); *id.* § 199.4(e)(8)(ii)(B) (excluding from coverage "[c]osmetic, reconstructive, or plastic surgery procedures performed primarily for psychological reasons"). But this other section of the regulations is immaterial here, given that Defendants do not rely on it in arguing that Plaintiffs lack standing. *See* Defs.' Cross-Motion 13 n.11; Doc. 44, # 321.

Plaintiffs instead lack standing because of § 199.4(g)(25)—a wholly separate regulation that bars TRICARE coverage for "[s]urgery performed primarily for psychological reasons (such

7

as psychogenic)," irrespective of whether that surgery can also be deemed cosmetic. Indeed, the "psychological reasons" exclusion is listed separately from another exclusion in § 199.4(g) for "[s]ervices and supplies in connection with cosmetic, reconstructive or plastic surgery," 32 C.F.R. § 199.4(g)(24), making clear that the two exclusions cover distinct categories. And the distinct scope of the "psychological reasons" exclusion, as compared to separate exclusions for "cosmetic, reconstructive, or plastic surgery," is further supported by another provision of the TRICARE implementing regulations, which makes explicit that each exclusion listed in § 199.4(g) is *"[i]n addition to*," rather than duplicative of, any limitations "enumerated and described in other sections of" the regulations. 32 C.F.R. § 199.4(g) (emphasis added).

For these same reasons, the legislative and regulatory history Plaintiffs summarize, *see* Pls.' Opp'n & Reply 5–7; Doc. 49, # 354–56, is largely irrelevant here. That history addresses the TRICARE regulations barring coverage for "cosmetic, reconstructive, [and] plastic surgery," which are separate and apart from the "psychological reasons" exclusion found at 32 C.F.R. § 199.4(g)(25). *See* Pls.' Opp'n & Reply 6–7; Doc. 49, # 355–56 (summarizing the provisions of 32 C.F.R. § 199.4(e)(8)).

Plaintiffs also contend that the "illustrative example of 'psychogenic' surgeries" provided in § 199.4(g)(25) "further supports the inapplicability" of the "psychological reasons" exclusion to gender transition surgeries. *Id.* 7; # 356; *see* 32 C.F.R. § 199.4(g)(25) (excluding coverage for "[s]urgery performed primarily for psychological reasons (*such as psychogenic*)" (emphasis added)). But "the inclusion of the words 'such as' in the language of the regulation indicates" that "psychogenic" conditions are, as Plaintiffs acknowledge, just one "illustrative" example of multiple conditions that fall within § 199.4(g)(25)'s ambit. *Perez v. Loren Cook Co.*, 803 F.3d 935, 940 (8th Cir. 2015); *see Bragdon v. Abbott*, 524 U.S. 624, 639 (1998) ("As the use of the term

8

'such as' confirms, the list is illustrative, not exhaustive."). Thus, even if gender dysphoria is not a "psychogenic condition," *see* Pls.' Opp'n & Reply 7; Doc. 49, # 356, that fact says nothing about whether the "psychological reasons" exclusion nonetheless also applies to surgeries to treat gender dysphoria.

> **C.      The 2016 Regulatory Amendment Does Not Speak to Whether the TRICARE Coverage Sought by Plaintiffs is Independently Barred by § 199.4(g)(25).**

Finally, Plaintiffs contend that the "psychological reasons" exclusion cannot serve as an "independent and sufficient basis for the exclusion of" TRICARE coverage for gender transition surgeries because that position is "belied by" a 2016 regulatory amendment ("the 2016 Amendment") that expanded coverage to "all non-surgical medically necessary and appropriate care in the treatment of gender dysphoria." *See* Pls.' Opp'n & Reply 8; Doc. 49, # 357 (citing TRICARE; Mental Health and Substance Use Disorder Treatment, 81 Fed. Reg. 61068, 61068 (Sept. 2, 2016)). The Executive Summary of the 2016 Amendment explains that coverage was not further extended to encompass surgical care for gender dysphoria because such care "remains prohibited by statute at 10 U.S.C. § 1079(a)(11)." 81 Fed. Reg. at 61068. But the 2016 Amendment did not address or even mention the "psychological reasons" exclusion. And there is no basis to infer meaning from the fact that the 2016 Amendment did not separately address whether other regulatory provisions—including the "psychological reasons" exclusion— "independently create[d] an impediment to the coverage of gender transition surgeries." Pls.' Opp'n & Reply 8; Doc. 49, # 357. Since the agency had already determined that the statutory impediment identified in the 2016 Amendment was sufficient on its own to justify the coverage decision at issue, it had no reason to explore this matter further. *Cf. F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (explaining that an agency need only "articulate a satisfactory explanation for its action" (citation omitted)).

9

In sum, the TRICARE coverage sought by Plaintiffs is independently barred by the "psychological reasons" exclusion. Accordingly, this case should be dismissed for lack of standing.

## II. Plaintiffs' Constitutional Challenge to 10 U.S.C. § 1079(a)(11) Fails as a Matter of Law.

As explained in Defendants' Cross-Motion, even if this case were to proceed on the merits, Plaintiffs' remaining constitutional challenge to 10 U.S.C. § 1079(a)(11)'s "sex gender change" exclusion "fails as a matter of law." Defs.' Cross-Motion 16–20; Doc. 44, # 324–28. Plaintiffs dedicate less than a page of their Opposition to these merits arguments, *see* Pls.' Opp'n & Reply 11; Doc. 49, # 360, and their response is notable for what it leaves unaddressed.

First, Plaintiffs do not dispute that § 1079(a)(11) is facially constitutional. Indeed, Plaintiffs themselves advance a gender-neutral construction of the statute that they concede does not raise any constitutional concerns. *See* Pls.' Mot. for Summ. J. 6–13; Doc. 36, # 256–263. The Court can thus dismiss Plaintiffs' facial challenge to § 1079(a)(11) without having to decide whether Plaintiffs' preferred construction is the only available one to the exclusion of others, since any categorical exclusion of all gender transition surgeries does not necessarily flow from the statute itself. *See* Defs.' Cross-Motion 17 n.5, 18; Doc. 44, # 325–26; *see also United States v. Stevens*, 559 U.S. 460, 472 (2010) (explaining that a successful facial challenge requires demonstrating that a statute "lacks any plainly legitimate sweep" (cleaned up)).

Plaintiffs also concede that "[t]his case is a challenge to a federal statute," Pls.' Opp'n & Reply 1; Doc. 49, # 350, and nowhere dispute the point that this case does not include any direct challenge to TRICARE's regulatory regime. *See* Defs.' Cross-Motion 2–4, 18–20; Doc. 44, # 310–12, 326–28. Nor do Plaintiffs address the well-settled law laid out in Defendants' Cross-Motion, which holds that a court should not "decide whether [a regulation] is constitutionally sound" in a

10

case where, as here, a plaintiff "has elected to challenge only [a] statute." *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 836 F.3d 57, 62 (D.C. Cir. 2016).

Instead, Plaintiffs' only response on the merits is that their "statutory argument" (which asserts that 10 U.S.C. § 1079(a)(11) can be construed to allow coverage for medically necessary surgery to treat gender dysphoria) "does not vitiate" their constitutional argument (which is a "facial challenge to a categorical ban on all gender transition surgeries") because the two arguments are made in the alternative and should be considered independently. Pls.' Opp'n & Reply 11; Doc. 49, # 360. But these arguments cannot be viewed in isolation. Rather, by demonstrating that § 1079(a)(11) can be construed in a way that raises no constitutional concerns, Plaintiffs directly undercut an essential facet of their facial challenge—because a statute can only be deemed facially unconstitutional if it "is unconstitutional in *all* of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (emphasis added).

Accordingly, the Court can resolve Plaintiffs' remaining claim on the narrow grounds presented—that is, whether § 1079(a)(11) categorically excludes gender transition surgery from TRICARE coverage—and should go no further. *See Victim Rts. Law Ctr. v. Rosenfelt*, 988 F.3d 556, 563 (1st Cir. 2021) ("Courts are obliged to avoid rulings on constitutional issues when non-constitutional grounds will suffice to resolve an issue."). Because Plaintiffs assert that § 1079(a)(11) does not necessarily impose a categorical exclusion for gender transition surgeries, their challenge to the statute fails as a matter of law and summary judgment should be granted for Defendants.

## CONCLUSION

For the reasons set forth above and in Defendants' Cross-Motion, the Court should grant summary judgment for Defendants.

Dated: April 5, 2024                        Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

EMILY B. NESTLER
Assistant Director
Civil Division

By: */s/ Zachary W. Sherwood*
ZACHARY W. SHERWOOD
Trial Attorney (Indiana Bar No. 37147-49)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
zachary.w.sherwood@usdoj.gov
(202) 616-8467

*Counsel for Defendants*