IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JANE DOE and SUSAN ROE,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>LLOYD J. AUSTIN, III, in his official capacity as Secretary of Defense; the U.S. DEPARTMENT OF DEFENSE; the U.S. DEFENSE HEALTH AGENCY; and the TRICARE HEALTH PLAN,<br><br>    *Defendants*. | Civil Action No.: 2:22-cv-00368-NT |

**DEFENDANTS' REPLY STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56(d) and the Court's Local Rule 56(h) Order, Doc. 29, Defendants Lloyd J. Austin, in his official capacity as Secretary of Defense; the United States Department of Defense; the United States Defense Health Agency; and the TRICARE Health Plan ("Defendants" or "DoD") hereby reply to Plaintiffs Jane Doe and Susan Roe's Statement of Additional Undisputed Facts in support of their opposition to Defendants' cross-motion for summary judgment, Doc. 50.[1]  Any admissions in this reply are made for purposes of summary judgment only.  *See* Local Rule 56(g).

---

[1] Defendants do not submit any additional undisputed material facts beyond (1) those asserted in the Parties' Stipulation of Facts, Doc. 34-1; (2) those admitted to or qualified in Defendants' Opposing Statement of Material Facts and Supporting Statement of Material Facts, Doc. 45; and (3) those admitted to or qualified in this reply statement.

1

### A. Responses to Plaintiffs' Statement of Supplemental Facts Related to Surgical Treatment of Gender Dysphoria.

1. <u>Plaintiffs' Statement</u>**:** Without treatment, many people with gender dysphoria are unable to adequately function in occupational, social, or other areas of life, and they experience a range of debilitating physical and mental symptoms. Affidavit of Randi Ettner, Ph.D. ("Ettner Aff.") ¶ 18; Doc. 34-3, # 222.

**RESPONSE:** Qualified. Defendants admit that, without treatment, some people with gender dysphoria are unable to adequately function in occupational, social, or other areas of functioning, and that some people with gender dysphoria who do not receive treatment may experience debilitating physical and mental symptoms. Parties' Stipulation of Facts ("Stip.") ¶ 39–40; Doc. 34-1, # 140.

2. <u>Plaintiffs' Statement</u>**:** Gender dysphoria is highly treatable, and it can be ameliorated or cured through medical treatment. Ettner Aff. ¶ 19; Doc. 34-3, # 222.

**RESPONSE:** Qualified. Defendants admit that medical treatment for gender dysphoria can be effective in addressing the clinically significant distress or impairment in functioning created by gender dysphoria by helping people who are transgender live in alignment with their gender identity. Stip. ¶ 21; Doc. 34-1, # 137.

3. <u>Plaintiffs' Statement</u>**:** A key component of medical treatment for people with gender dysphoria is to live, function in society, and be regarded by others consistent with their gender identity. Ettner Aff. ¶ 24; Doc. 34-3, # 225.

**RESPONSE:** Qualified. Defendants admit that medical treatment for gender dysphoria can be effective in addressing the clinically significant distress or impairment in functioning created by gender dysphoria by helping people who are transgender live in alignment with their gender identity. Stip. ¶ 21; Doc. 34-1, # 137.

4. <u>Plaintiffs' Statement</u>**:** Medically necessary surgical treatments for gender dysphoria are for the purpose of ameliorating the debilitation of gender dysphoria and allowing the individual to live and function in society consistent with their gender identity. Affidavit of Loren S. Schechter, M.D. ("Schechter Aff.") ¶¶ 20, 26; Doc. 34-2, # 148, 150.

**RESPONSE:** Qualified. Defendants admit that surgical treatments are a component of medical treatment for gender dysphoria that are medically necessary for some individuals based on the particular circumstances of that individual. Stip. ¶ 29; Doc. 34-1, # 138. Defendants further admit that gender-affirming surgeries may include certain surgical procedures undergone by a transgender individual to better align their body with their gender identity and that for some individuals with gender dysphoria, gender-affirming surgeries are medically necessary to treat impairments in social, occupational, or other important areas of functioning resulting from that person's gender dysphoria. Stip. ¶ 30, 39; Doc. 34-1, # 138, 140.

5. <u>Plaintiffs' Statement</u>**:** The goal of gender confirmation surgeries is to bring a person's body into better alignment with their gender identity. Schechter Aff. ¶ 14; Doc. 34-2, # 146.

**RESPONSE:** Admitted.

6. <u>Plaintiffs' Statement</u>**:** Surgical procedures for the treatment of gender dysphoria include surgical procedures to better align a transgender individual's primary or secondary sex characteristics with their gender identity. Schechter Aff. ¶ 20; Doc. 34-2, # 148.

**RESPONSE:** Admitted.

7. <u>Plaintiffs' Statement</u>**:** The World Professional Association for Transgender Health's ("WPATH") Standards of Care ("SOC") provide that effective treatment options for gender dysphoria include various surgical procedures to align a person's primary and/or secondary sex characteristics with the person's gender identity. Schechter Aff. ¶ 17; Doc. 34-2, # 147.

**RESPONSE:** Admitted.

8. <u>Plaintiffs' Statement</u>**:** In addition to WPATH, the Endocrine Society (the leading professional organization devoted to research on hormones and the clinical practice of endocrinology) has also issued clinical guidelines for the treatment of transgender people, which recognize that gender confirming surgeries often are necessary and effective treatments of gender dysphoria. Schechter Aff. ¶ 18; Doc. 34-2, # 148.

**RESPONSE:** Qualified.  Defendants admit that the Endocrine Society is a well-established professional organization that has issued clinical guidelines for the treatment of transgender people, and that according to those guidelines, the number and type of interventions to treat gender dysphoria may differ from person to person.  Stip. ¶¶ 23, 27; Doc. 34-1 # 137–38.

9. <u>Plaintiffs' Statement</u>**:** Surgical procedures for gender dysphoria are safe, effective, and medically accepted. Schechter Aff. ¶¶ 15, 29; Doc. 34-2, # 147, 151.

**RESPONSE:** Qualified.  Defendants admit that surgical procedures for gender dysphoria may be safe, effective, and medically necessary for some individuals based on the particular circumstances of that individual.  Stip. ¶ 31; Doc. 34-1, # 138.

10. <u>Plaintiffs' Statement</u>**:** The WPATH Standards of Care are the internationally recognized guidelines for the treatment of gender dysphoria, and they have been endorsed by authoritative medical and mental health organizations. Ettner Aff. ¶ 22; Doc. 34-3, # 223.

**RESPONSE:** Qualified.  Defendants admit that the WPATH Standards of Care have been recognized by certain organizations, including the American Medical Association and the Endocrine Society, as representing the consensus of the medical and mental health community regarding the appropriate treatment for gender dysphoria.  Stip. ¶ 23; Doc. 34-1, # 137.

11. <u>Plaintiffs' Statement</u>**:** The broader medical community and authoritative medical organizations, including the American Medical Association, recognize that surgical treatments for gender dysphoria are safe, effective standard-of-care treatments for a serious medical condition and are not cosmetic. Schechter Aff. ¶ 19; Doc. 34-2, # 148 and Ettner Aff. ¶ 22; Doc. 34-3, # 223.

**RESPONSE:** Qualified. Defendants admit that much of the medical community, including well-established medical organizations, recognize that surgical treatments for gender dysphoria are medically necessary for some individuals based on the particular circumstances of that individual. Stip. ¶ 29; Doc. 34-1, # 138.

12. <u>Plaintiffs' Statement</u>**:** The medical community and insurance providers recognize a distinction between surgery which is medically necessary and cosmetic surgery, which is generally not. Schechter Aff. ¶ 24; Doc. 34-2, # 150.

**RESPONSE:** Qualified. Defendants admit that much of the medical community and some insurance providers make a distinction between surgery which is medically necessary and surgery that is cosmetic.

13. <u>Plaintiffs' Statement</u>**:** The underlying diagnosis and purpose of the surgery determine whether a surgical procedure is considered medically necessary or cosmetic. Schechter Aff. ¶ 24; Doc. 34-2, # 150.

**RESPONSE:** Admitted.

14. <u>Plaintiffs' Statement</u>**:** Medically necessary surgical treatments for gender dysphoria are not cosmetic because they do not have the goal of enhancing beauty or appearance. Ettner Aff. ¶ 26; Doc. 34-3, # 225.

**RESPONSE:** Qualified. Defendants admit that medically necessary surgical treatments for gender dysphoria are not cosmetic to the extent that such treatments have the goal of treating

impairments in social, occupational, or other areas of functioning resulting from a person's gender dysphoria.  Stip. ¶ 39; Doc. 34-1, # 140.

15. <u>Plaintiffs' Statement</u>**:** When performing gender confirmation surgeries, surgeons use many of the same procedures they use to treat other medical conditions. For example, mastectomies and chest/breast reconstruction, hysterectomies/salpingo-oophorectomies (which includes removal of the fallopian tubes and ovaries), and orchiectomies commonly treat individuals with cancer or a genetic predisposition to cancer. Surgical procedures also reconstruct external genitalia for individuals after certain medical conditions such as cancer, surgical removals as discussed above, and/or traumatic injuries or disabling infections to the genitalia. In addition, facial reconstruction procedures often follow traumatic injury. Schechter Aff. ¶¶ 30-31; Doc. 34-2, # 151 and Ettner Aff. ¶ 32; Doc. 34-3, # 229.

**RESPONSE:** Admitted.

### B. Responses to Plaintiffs' Statement of Facts Related to the Plaintiffs.

16. <u>Plaintiffs' Statement</u>**:** Plaintiff Jane Doe is 22 years old and has been enrolled in TRICARE since approximately 2002 as a dependent of her father who served for more than two decades in the United States military. Jane Doe Aff. ("Doe Aff.") ¶¶ 2-4; Doc. 34-4, # 245.

**RESPONSE:** Admitted.

17. <u>Plaintiffs' Statement</u>**:** After she completes school in May 2024, Jane Doe will continue to be eligible for TRICARE through the TRICARE Young Adult Program. Doe Aff. ¶ 4; Doc. 34-4, # 245.

**RESPONSE:** Defendants lack sufficient information to admit or deny these facts, which call for speculation about future events, and which also are not material to resolving the instant cross-motions.

18. <u>Plaintiffs' Statement</u>**:** Jane Doe is a transgender woman. Although she was assigned the sex of male at birth, she has known since the age of 11 or 12 that she is female. Doe Aff. ¶ 3 (please note numbering error in affidavit); Doc. 34-4; # 245.

**RESPONSE:** Qualified.  Defendants admit that Jane Doe is a transgender woman who was assigned the sex of male at birth and identifies as female.  Defendants lack sufficient information to admit or deny the remaining facts in this paragraph, which also are not material to resolving the instant cross-motions.  Defendants admit that this paragraph describes Jane Doe's testimony.

19. <u>Plaintiffs' Statement</u>**:** Jane Doe was diagnosed with gender dysphoria in 2018 at the age of 17. Doe Aff. ¶ 4 (please note numbering error in affidavit); Doc. 34-4, # 245.

**RESPONSE:** Qualified.  Defendants admit that Jane Doe has been diagnosed with gender dysphoria.  Defendants lack sufficient information to admit or deny the remaining allegations in this paragraph, which also are not material to resolving the instant cross-motions.  Defendants admit that this paragraph describes Jane Doe's testimony.

20. <u>Plaintiffs' Statement</u>**:** Jane Doe has undergone medically recommended and necessary treatment for gender dysphoria, including medically necessary gender transition surgeries that are excluded by TRICARE. Doe Aff. ¶¶ 5-9; Doc. 34-4, # 246.

**RESPONSE:** Qualified.  Defendants admit that Jane Doe has undergone medically recommended and necessary treatment for gender dysphoria, some of which has been covered by TRICARE and some of which is excluded from coverage under TRICARE.  Defs.' Answer ¶ 39–41; Doc. 19, # 101.

21. <u>Plaintiffs' Statement</u>**:** Jane Doe's medical treatment for gender dysphoria is ongoing. However, the continuing exclusion in Section 1079(a)(11) remains a complete barrier to coverage for any additional surgeries she will need. Doe Aff. ¶ 10; Doc. 34-4, # 247.

7

**RESPONSE:** Qualified. Defendants lack sufficient information to admit or deny the statements in the first sentence of this paragraph, which also are not material to resolving the instant cross-motions. Defendants admit that the first sentence of this paragraph describes Jane Doe's testimony. The assertion in the second sentence is not a statement of fact but rather assumes a legal conclusion.

22. **Plaintiffs' Statement:** If the exclusion in Section 1079(a)(11) were eliminated, Jane Doe would utilize TRICARE coverage for any additional gender transition surgeries. Doe Aff. ¶ 11; Doc. 34-4, # 247.

**RESPONSE:** Defendants lack sufficient information to admit or deny the facts asserted in this paragraph, which call for speculation about future events in a hypothetical situation.

23. **Plaintiffs' Statement:** Plaintiff Susan Roe is 21 years old, and her father served for more than two decades in the United States military. Affidavit of Susan Roe ("Roe Aff.") ¶¶ 2-3; Doc. 34-5, # 248.

**RESPONSE:** Defendants lack sufficient information to admit or deny the allegations in this paragraph, which also are not material to resolving the instant cross-motions, because Susan Roe is proceeding anonymously and Defendants do not know her identity. Defendants admit that this paragraph describes Susan Roe's testimony.

24. **Plaintiffs' Statement:** Susan Roe was enrolled in TRICARE as a dependent of her father until she took a leave of absence from school starting in April 2023. As of November 2023, Susan Roe has been enrolled in TRICARE Young Adult. When Susan returns to school full-time in the first half of 2024, she will again be eligible for and intends to re-enroll in TRICARE as a dependent of her father. Roe Aff. ¶¶ 4-5 (please note numbering errors in affidavit); Doc. 34-5, # 248-49.

**RESPONSE:** Defendants lack sufficient information to admit or deny the allegations in this paragraph, which also are not material to resolving the instant cross-motions, because Susan Roe is proceeding anonymously and Defendants do not know her identity. Defendants admit that this paragraph describes Susan Roe's testimony. In addition, Defendants note that the third sentence of this paragraph calls for speculation about future events.

25. <u>Plaintiffs' Statement</u>**:** Susan Roe is a transgender woman. Although she was assigned the sex of male at birth, she has a female gender identity. Roe Aff. ¶ 5 (please note numbering error in affidavit); Doc. 34-5, # 249.

**RESPONSE:** Defendants lack sufficient information to admit or deny the allegations in this paragraph, which also are not material to resolving the instant cross-motions, because Susan Roe is proceeding anonymously and Defendants do not know her identity. Defendants admit that this paragraph describes Susan Roe's testimony.

26. <u>Plaintiffs' Statement</u>**:** Susan Roe was diagnosed with gender dysphoria in 2022. Roe Aff. ¶ 6; Doc. 34-5, # 249.

**RESPONSE:** Defendants lack sufficient information to admit or deny the allegations in this paragraph, which also are not material to resolving the instant cross-motions, because Susan Roe is proceeding anonymously and Defendants do not know her identity. Defendants admit that this paragraph describes Susan Roe's testimony.

27. <u>Plaintiffs' Statement</u>**:** Susan Roe has undergone medically recommended and necessary treatment for gender dysphoria including a surgical procedure in August 2023. At that time, she was not enrolled in TRICARE. Roe Aff. ¶¶ 7-11; Doc. 34-5, # 249.

**RESPONSE:** Defendants lack sufficient information to admit or deny the allegations in this paragraph, which also are not material to resolving the instant cross-motions, because Susan Roe

9

is proceeding anonymously and Defendants do not know her identity. Defendants admit that this paragraph describes Susan Roe's testimony.

28. <u>Plaintiffs' Statement</u>**:** Susan Roe's need for medical treatment of gender dysphoria continues. She will need additional surgeries as medically necessary treatment for her gender dysphoria. Roe Aff. ¶ 11, Doc. 34-5, # 249.

**RESPONSE:** Defendants lack sufficient information to admit or deny the allegations in this paragraph, which also are not material to resolving the instant cross-motions, because Susan Roe is proceeding anonymously and Defendants do not know her identity. Defendants admit that this paragraph describes Susan Roe's testimony.

29. <u>Plaintiffs' Statement</u>**:** The exclusion of gender transition surgeries in TRICARE health benefits coverage is a complete barrier to coverage for the additional gender transition surgeries that Susan Roe needs. Roe Aff. ¶ 11; Doc. 34-5, # 249.

**RESPONSE:** The assertion in this paragraph is not a statement of fact but rather assumes a legal conclusion.

30. <u>Plaintiffs' Statement</u>**:** If the exclusion in Section 1079(a)(11) were lifted, Susan Roe would utilize TRICARE coverage for those medically necessary gender transition surgeries. Roe Aff. ¶ 12; Doc. 34-5; # 249.

**RESPONSE:** Defendants lack sufficient information to admit or deny the statements in this paragraph, which call for speculation about future events in a hypothetical situation.

**C. Responses to Plaintiffs' Statement of Additional Facts.**

31. <u>Plaintiffs' Statement</u>**:** Gender dysphoria is a medical condition resulting from differences in the brain. Supplemental Affidavit of Randi Ettner, Ph.D. ("Ettner Supp.") ¶ 1; Doc. 48-1, # 345.

**RESPONSE:** The statements in this paragraph should be stricken because they are supported by an improper and untimely supplemental affidavit from an expert witness that does not comply with the Federal Rules of Civil Procedure.

The Court's Scheduling Order required Plaintiffs to "designate" their expert witnesses and to "provide a complete statement of all opinions to be expressed [by those witnesses] and the basis and reasons therefor" by August 25, 2023, Scheduling Order with Incorporated Rule 26(f) Order 2; Doc. 20, # 107, and Plaintiffs disclosed an expert report from Randi Ettner, Ph.D, by that deadline. That same report was subsequently included in the Stipulated Summary Judgment Record the parties filed on December 13, 2023. *See* Doc. 34-3. By that point, Defendants had already alerted Plaintiffs of their intention to rely on the "psychological reasons" exclusion to TRICARE coverage, *see* 32 C.F.R. § 199.4(g)(25). Yet Plaintiffs did not seek to supplement their expert disclosures before the Stipulated Summary Judgment Record deadline. *See* Fed. R. Civ. P. 26(e)(1). Instead, Plaintiffs waited to file a "Supplemental Affidavit" from Ettner in conjunction with their Opposition to Defendants' Cross-Motion for Summary Judgment. *See* Docs. 48-1, 49.

In addition to this inexplicable tardiness, such a supplementation is appropriate only if it "correct[s] inaccuracies" in the original expert report or "fill[s] the interstices of an incomplete report based on information *that was not available at the time of the initial disclosure*." *Klinges v. Pomerleau*, 2:19-cv-418, 2022 WL 1487036, at *5 (D. Me. May 11, 2022) (Torresen, J.) (emphasis added) (citation omitted). And here, Plaintiffs' supplemental expert affidavit "neither corrects any inaccuracy" nor "fills in gaps based on new information" that was not already available to Plaintiffs before summary judgment briefing commenced. *Id.* The supplemental affidavit instead attempts to present a new theory of standing that Plaintiffs elected not to raise in their motion for summary judgment, and it does so by introducing new expert testimony that

appears to contradict prior statements made in that same expert's initial report. *See Me. Hum. Rts. Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 389 (D. Me. 2011) ("[I]f a supplemental expert disclosure presents a new theory of the case, the district court has the discretion to exclude it . . . ."); *Me. Med. Ctr. v. William A. Berry & Son, Inc.*, No. 2:16-cv-52, 2017 WL 1411478, at *2 (D. Me. Apr. 20, 2017) (concluding that because a supplemental expert disclosure "present[ed] a new theory of damages," it was "not a refinement of [the] initial expert disclosure" and was thus "not timely under Rule 26"). Consequently, Plaintiffs should not be permitted "to use" their improper supplemental affidavit "to supply evidence" for purposes of summary judgment here. Fed. R. Civ. P. 37(c)(1); *see Harriman v. Hancock Cnty.*, 627 F.3d 22, 29 (1st Cir. 2010) ("The baseline rule is that the required sanction [under Rule 37] in the ordinary case is mandatory preclusion." (cleaned up)); *Klinges*, 2022 WL 1487036, at *6 (explaining that the burden of avoiding preclusion "is on the party that has failed to comply with discovery deadlines" (citation omitted)).

Without waiving this request to strike, the following response is provided: Qualified. Defendants lack sufficient information to admit or deny the statements in this paragraph, which also are not necessary for resolving the instant cross-motions. Defendants admit that gender dysphoria is the term for the health condition experienced by a transgender person who has clinically significant distress or impairments in functioning resulting from the lack of congruence between their gender identity and sex classified at birth. Parties' Stipulation of Facts ("Stip.") ¶ 18; Doc. 34-1, # 136–37.

32. <u>Plaintiffs' Statement</u>**:** There is a scientific consensus that gender identity is biologically based and a significant body of medical research that gender dysphoria has a physical and

appears to contradict prior statements made in that same expert's initial report. *See Me. Hum. Rts. Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 389 (D. Me. 2011) ("[I]f a supplemental expert disclosure presents a new theory of the case, the district court has the discretion to exclude it . . . ."); *Me. Med. Ctr. v. William A. Berry & Son, Inc.*, No. 2:16-cv-52, 2017 WL 1411478, at *2 (D. Me. Apr. 20, 2017) (concluding that because a supplemental expert disclosure "present[ed] a new theory of damages," it was "not a refinement of [the] initial expert disclosure" and was thus "not timely under Rule 26"). Consequently, Plaintiffs should not be permitted "to use" their improper supplemental affidavit "to supply evidence" for purposes of summary judgment here. Fed. R. Civ. P. 37(c)(1); *see Harriman v. Hancock Cnty.*, 627 F.3d 22, 29 (1st Cir. 2010) ("The baseline rule is that the required sanction [under Rule 37] in the ordinary case is mandatory preclusion." (cleaned up)); *Klinges*, 2022 WL 1487036, at *6 (explaining that the burden of avoiding preclusion "is on the party that has failed to comply with discovery deadlines" (citation omitted)).

Without waiving this request to strike, the following response is provided: Qualified. Defendants lack sufficient information to admit or deny the statements in this paragraph, which also are not necessary for resolving the instant cross-motions. Defendants admit that gender dysphoria is the term for the health condition experienced by a transgender person who has clinically significant distress or impairments in functioning resulting from the lack of congruence between their gender identity and sex classified at birth. Parties' Stipulation of Facts ("Stip.") ¶ 18; Doc. 34-1, # 136–37.

32. <u>Plaintiffs' Statement</u>**:** There is a scientific consensus that gender identity is biologically based and a significant body of medical research that gender dysphoria has a physical and

biological etiology. Ettner Supp. ¶ 1; Doc. 48-1, # 345 and Ettner Aff. ¶¶ 15-17; Doc. 34-3, # 219-22.

**RESPONSE**: To the extent the statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness, the statements should be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. The phrases "scientific consensus" and "significant body" are vague and undefined; thus, Defendants lack sufficient information to admit or deny the statements in this paragraph, which also are not necessary for resolving the instant cross-motions. Defendants admit that gender dysphoria is the term for the health condition experienced by a transgender person who has clinically significant distress or impairments in functioning resulting from the lack of congruence between their gender identity and sex classified at birth. Stip. ¶ 18; Doc. 34-1, # 136–37.

33. Plaintiffs' Statement**:** Gender dysphoria evolves as a result of the interaction of the developing brain and sex hormones. Ettner Supp. ¶ 1; Doc. 48-1, # 345.

**RESPONSE:** The statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness and should therefore be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. Defendants lack sufficient information to admit or deny the statements in this paragraph, which also are not necessary for resolving the instant cross-motions. Defendants admit that gender dysphoria is the term for the health condition experienced by a transgender person who has clinically significant distress or impairments in functioning resulting from the lack of congruence between their gender identity and sex classified at birth. Stip. ¶ 18; Doc. 34-1, # 136–37.

Defendants also admit that gender dysphoria results from an incongruence between gender identity and a person's sex classified at birth. Stip. ¶ 22; Doc. 34-1, # 137.

34. <u>Plaintiffs' Statement</u>**:** The defining feature of the medical condition gender dysphoria is a physical differentiation resulting from this neurodevelopmental anatomical anomaly, commonly referred to as gender incongruence. Ettner Supp. ¶ 2; Doc. 48-1, # 345.

**RESPONSE:** The statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness and should therefore be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. Defendants deny the statements in this paragraph to the extent they contradict Plaintiffs' original expert report. *See, e.g.*, Ettner Aff. ¶ 10; Doc. 34-3, # 217–18 ("The critical element of Gender Dysphoria is the presence of clinically significant distress associated with the condition."). Defendants admit that, as explained in the Diagnostic & Statistical Manual of Mental Disorders ("DSM-5"), a gender dysphoria diagnosis requires that an individual experience incongruence between their gender identity and sex classified at birth for at least six months and experience clinically significant distress or impairment in social, occupational, or other areas of functioning. Stip. ¶ 19; Doc. 34-1, # 137.

35. <u>Plaintiffs' Statement</u>**:** A person with gender dysphoria has the experience of being wrongly embodied due to their anatomy. Ettner Supp. ¶ 3; Doc. 48-1, # 346.

**RESPONSE:** The statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness and should therefore be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. Defendants admit that gender dysphoria results from an incongruence between an individual's gender identity and that individual's sex classified at birth. Stip. ¶ 22; Doc. 34-1, # 137.

36. <u>Plaintiffs' Statement</u>**:** There is no recognized or effective psychiatric or psychological treatment for gender dysphoria. Ettner Supp. ¶ 4; Doc. 48-1, # 346.

**RESPONSE:** The statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness and should therefore be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. Defendants deny the statements in this paragraph to the extent they contradict Plaintiffs' original expert report. *See, e.g.*, Ettner Aff. ¶¶ 1–2; Doc. 34-3, # 215 (stating that Ettner, a "licensed clinical and forensic psychologist," has "evaluated, diagnosed, and *treated* over 3,000 individuals with gender dysphoria and mental health issues related to gender variance" (emphasis added)); *id.* ¶ 20; # 223 (acknowledging that "[p]sychotherapy" is among the "evidence-based care" options recommended by WPATH's Standards of Care). Defendants admit that medical treatment for gender dysphoria is intended to address the clinically significant distress or impairment in functioning created by gender dysphoria by helping people who are transgender live in alignment with their gender identity. Stip. ¶ 21; Doc. 34-1, # 137. Defendants also admit that some transgender individuals are able to achieve comfort with their gender identity without surgery and that surgery may be medically necessary to alleviate gender dysphoria for other transgender individuals. Stip. ¶ 38; Doc. 34-1, # 139.

37. <u>Plaintiffs' Statement</u>**:** The purpose of surgical treatment for gender dysphoria is to correct an underlying medical condition which is the incongruence between a person's anatomy and their immutable brain-based gender identity. Ettner Supp. ¶¶ 5, 9; Doc. 48-1, # 346, 348.

**RESPONSE:** The statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness and should therefore be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. Defendants admit that surgical treatments are a component of medical treatment for gender dysphoria that are medically necessary for some individuals based on the particular circumstances of that individual. Stip. ¶ 29; Doc. 34-1, # 138. Defendants also admit that surgeries for gender transition may include certain surgical procedures undergone by a transgender individual to better align their body with their gender identity. Stip. ¶ 30; Doc. 34-1, # 138.

38. <u>Plaintiffs' Statement</u>**:** There are disorders in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-5) that do not have a psychological or emotional etiology, including intellectual disabilities, neurocognitive disorders due to medical conditions, and breathing-related sleep disorders. Ettner Supp. ¶ 7; Doc. 48-1, # 346-47.

**RESPONSE:** The statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness and should therefore be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. Defendants lack sufficient information to admit or deny the statements in this paragraph, which also are not necessary for resolving the instant cross-motions. Defendants admit that the DSM-5 is an authoritative source for psychiatric conditions. Stip. ¶ 18; Doc. 34-1, # 18.

39. <u>Plaintiffs' Statement</u>**:** A treatment for a condition is not necessarily for psychological reasons simply because the condition is catalogued in the DSM-5. Ettner Supp. ¶ 7; Doc. 48-1, # 346-47.

**RESPONSE:** The statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness and should therefore be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. Defendants lack sufficient information to admit or deny the statements in this paragraph, which also are not necessary for resolving the instant cross-motions. Defendants admit that the DSM-5 is an authoritative source for psychiatric conditions; that gender dysphoria is listed in the DSM-5; that gender dysphoria is a health condition experienced by a transgender person who has clinically significant distress or impairments in functioning resulting from the lack of congruence between their gender identity and sex classified at birth; and that medical treatment for gender dysphoria is intended to address that clinically significant distress or impairment in functioning. Stip. ¶¶ 18–21; Doc. 34-1, # 136–37.

40. <u>Plaintiffs' Statement</u>**:** Gender dysphoria does not have a psychological or emotional etiology. Ettner Supp. ¶¶ 1-2; Doc. 48-1, # 345.

**RESPONSE:** The statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness and should therefore be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. Defendants lack sufficient information to admit or deny the statements in this paragraph, which also are not necessary for resolving the instant cross-motions. Defendants admit that gender

17

dysphoria results from an incongruence between an individual's gender identity and sex classified at birth and that a gender dysphoria diagnosis requires in part that an individual experience clinically significant distress or impairment in social, occupational, or other areas of functioning. Stip. ¶¶ 19, 22; Doc. 34-1, # 137.

41. <u>Plaintiffs' Statement</u>**:** The clinically significant distress associated with gender dysphoria is an indicator of the underlying medical condition. Ettner Supp. ¶ 8; Doc. 48-1, # 347-48.

**RESPONSE:** The statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness and should therefore be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. Defendants admit that gender dysphoria is the term for the health condition experienced by a transgender person who has clinically significant distress or impairments in functioning resulting from the lack of congruence between their gender identity and sex classified at birth. Stip. ¶ 18; Doc. 34-1, # 136–37.

42. <u>Plaintiffs' Statement</u>**:** In science and medicine, the term "psychogenic" refers to the development of a disability without any physiological or organic cause. Ettner Supp. ¶ 10; Doc. 48-1, # 348.

**RESPONSE:** The statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness and should therefore be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. Defendants admit the substance of the statements in this paragraph but assert that the statements are not necessary for resolving the instant cross-motions.

43. <u>Plaintiffs' Statement</u>**:** Examples of psychogenic disabilities include blindness, hearing loss, or the sudden inability to walk with no underlying medical or physiological cause. Ettner Supp. ¶ 10; Doc. 48-1. # 348-49.

**RESPONSE:** The statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness and should therefore be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. Defendants admit the substance of the statements in this paragraph but assert that the statements are not necessary for resolving the instant cross-motions.

44. <u>Plaintiffs' Statement</u>**:** There is no medical or scientific support for any assertion that gender dysphoria is a psychogenic condition. Ettner Supp. ¶ 11; Doc. 48-1, # 349.

**RESPONSE:** The statements in this paragraph are supported by Plaintiffs' improper and untimely supplemental affidavit from an expert witness and should therefore be stricken for the reasons provided in Defendants' response to ¶ 31.

Without waiving this request to strike, the following response is provided: Qualified. Defendants lack sufficient information to admit or deny the statements in this paragraph, which also are not necessary for resolving the instant cross-motions. Defendants admit that gender dysphoria is the term for the health condition experienced by a transgender person who has clinically significant distress or impairments in functioning resulting from the lack of congruence between their gender identity and sex classified at birth.  Stip. ¶ 18; Doc. 34-1, # 136–37.

Dated: April 5, 2024                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General
                                        Civil Division

                                        EMILY B. NESTLER
                                        Assistant Director
                                        Civil Division

                                        By: */s/ Zachary W. Sherwood*
                                        ZACHARY W. SHERWOOD
                                        Trial Attorney (Indiana Bar No. 37147-49)
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street NW
                                        Washington, D.C. 20005
                                        zachary.w.sherwood@usdoj.gov
                                        (202) 616-8467

                                        *Counsel for Defendants*