UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JANE DOE and SUSAN ROE, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>LLOYD J. AUSTIN, III, in his official )<br>capacity as Secretary of Defense, the )<br>U.S. DEPARTMENT OF DEFENSE, )<br>the U.S. DEFENSE HEALTH )<br>AGENCY, and the TRICARE )<br>HEALTH PLAN, )<br>)<br>Defendants. ) | Docket No. 2:22-cv-00368-NT |

**ORDER ON DEFENDANTS' REQUESTS TO STRIKE AND OTHER OBJECTIONS**

The Plaintiffs Jane Doe and Susan Roe are two transgender women who receive health insurance through the United States military's TRICARE program ("**TRICARE**") as dependents of former servicemembers. The Defendants are TRICARE itself and three parties responsible for implementing and overseeing it: the U.S. Secretary of Defense Lloyd J. Austin, III; the U.S. Department of Defense; and the U.S. Defense Health Agency. The parties have filed cross-motions for summary judgment on the Plaintiffs' claim that the Defendants' enforcement of a specific TRICARE statutory provision to deny medically necessary gender transition surgeries violates the Equal Protection guarantee of the Fifth Amendment of the U.S. Constitution (ECF Nos. 36, 46).

I issue this order to resolve the Defendants' requests to strike[1] fourteen summary judgment facts asserted by the Plaintiffs that cite a supplemental expert report the Defendants allege is "improper and untimely." Pl. Jane Doe & Susan Roe's Resp. to Defs.' Reqs. to Strike Pls.' Statement of Additional Facts ("**SMF**") ¶¶ 31–44 (ECF No. 55).[2] I address the merits of the parties' summary judgment motions in a separate order.

For the reasons below, I **DENY** the Defendants' requests to strike.

## BACKGROUND

The Plaintiffs began this action on November 21, 2022 (ECF No. 1), and they filed an amended complaint on January 27, 2023, Compl. for Decl. and Inj. Relief ("**Am. Compl.**") (ECF No. 5). The Amended Complaint's sole remaining claim is that the Defendants' enforcement of a TRICARE coverage exclusion codified at 10 U.S.C. § 1079(a)(11) (the "**Statutory Exclusion**") to deny gender transition surgery violates the Plaintiffs' Equal Protection rights. Am. Compl. ¶¶ 60–61. The Statutory Exclusion bars coverage of any "[s]urgery which improves physical appearance but is not expected to significantly restore functions (including mammary augmentation, face lifts, and sex gender changes)." 10 U.S.C. § 1079(a)(11); *see* Am. Compl. ¶ 14.

---

[1] Under District of Maine Local Rule 56(e), "[m]otions to strike statements of fact are not allowed." D. Me. Loc. R. 56(e). Instead, a party who "contends that an individual statement of fact should not be considered by the court . . . may include as part of the response that the statement of fact 'should be stricken' with a brief statement of the reason(s) and the authority or record citation in support." *Id.* The opposing party "may respond to a request to strike . . . within 14 days." *Id.*

[2] Consistent with my Local Rule 56(h) Order (ECF No. 29), the parties filed a single consolidated statement of all facts, admissions, denials, qualifications, and requests to strike. *See* Pl. Jane Doe & Susan Roe's Resp. to Defs.' Reqs. to Strike Pls.' Statement of Additional Facts ("**SMF**") (ECF No. 55).

On June 9, 2023, the United States Magistrate Judge entered a scheduling order that required the Plaintiffs to designate and provide expert reports by August 25, 2023 and set a discovery deadline of October 27, 2023. Scheduling Order 2–3 (ECF No. 20). On August 23, 2023, the Plaintiffs timely served the Defendants with expert reports from board-certified plastic surgeon Dr. Loren S. Schechter, M.D. ("**Schechter Aff.**") (ECF No. 34-2) and clinical and forensic psychologist Dr. Randi Ettner, Ph.D. ("**Ettner Aff.**") (ECF No. 34-3). *See* SMF ¶ 31 (stating the date on which the Plaintiffs served these reports). Both reports focus on establishing that because gender transition surgery[3] is medically necessary, it is not accurately described as a procedure that "improves physical appearance" without "significantly restor[ing] functions" and therefore is not barred by the Statutory Exclusion. *See, e.g.*, Schecter Aff. ¶¶ 15, 24–25; Ettner Aff. ¶¶ 18–37.

Discovery closed on October 27, 2023, Scheduling Order 2, and on December 13, 2023, the parties filed their Stipulated Summary Judgment Record (ECF No. 34). That record consists of forty-three jointly stipulated facts ("**Stipulated Facts**" or "**Stip.**") (ECF No. 34-1), the Plaintiffs' two expert reports, and two non-expert affidavits from the Plaintiffs themselves (ECF Nos. 34-4, 34-5). The Defendants submitted no additional evidence beyond the Stipulated Facts.

---

[3] The Plaintiffs' experts refer to the procedures the Plaintiffs seek as "gender confirming surgeries," "gender affirming surgeries," and "gender confirmation." *See, e.g.*, Aff. of Dr. Loren S. Schechter, M.D. 1 n.1 (ECF No. 34-2) (discussing terminology). For consistency, I use the term "gender transition surgery" from the Plaintiffs' Amended Complaint (ECF No. 5) and summary judgment briefing (ECF Nos. 36, 49).

On December 21, 2023, the Plaintiffs filed a motion for summary judgment on their Equal Protection claim ("**Pls.' MSJ**") (ECF No. 36) and consistent with the Local Rules of the District of Maine ("**Local Rules**"), a statement of thirty material facts (ECF No. 37). *See* D. Me. Loc. R. 56(b) (requiring parties to support a summary judgment motion with "a separate, short, and concise statement of material facts"). On February 16, 2024, the Defendants filed an opposition and cross-motion for summary judgment ("**Defs.' MSJ**") (ECF No. 44) that argues for the first time in this litigation that the Plaintiffs lack constitutional standing because of a TRICARE regulation that excludes surgeries performed "primarily for psychological reasons." Defs.' MSJ 6–7, 13–14 (quoting 32 C.F.R. § 199.4(g)(25)) (the "**Psychological Reasons Regulation**"). The Defendants also filed a statement responding to the Plaintiffs' thirty asserted facts without introducing any new facts or evidence into the record (ECF No. 45).[4]

Several weeks later on March 12 and 15, 2024, the Plaintiffs filed a five-page supplemental expert report from Dr. Ettner ("**Ettner Supplement**" or "**Ettner Suppl.**") (ECF No. 48-1), a brief opposing the Defendants' cross-motion (ECF No. 49), and fourteen additional facts (ECF No. 50).[5] All fourteen facts cite the Ettner Supplement, which focuses on establishing—in response to the Defendants' new

---

[4] *See* Defs.' Opp'g Statement of Material Facts and Suppl. Statement of Material Facts 1 n.1 (ECF No. 45) ("Defendants do not submit any additional undisputed material facts beyond (1) those asserted in the Parties' Stipulation of Facts, Doc., 34-1, and (2) those admitted to or qualified in this statement.").

[5] A party's "opposing statement [of material facts] may contain in a separately titled section *additional facts*, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule." D. Me. Loc. R. 56(c) (emphasis added).

4

standing argument—that gender transition surgery is not "performed primarily for psychological reasons." *See, e.g.*, Ettner Suppl. ¶ 6.

The Defendants filed a reply motion and reply statement of facts (ECF Nos. 53, 54), arguing that because the Ettner Supplement was "improper and untimely" under Federal Rule of Civil Procedure 26 ("**Rule 26**"), I should strike the Plaintiffs' fourteen additional facts as a sanction under Federal Rule of Civil Procedure 37 ("**Rule 37**"). SMF ¶¶ 31–44. The Plaintiffs responded to the Defendants' requests to strike. SMF ¶¶ 31–44.

## LEGAL STANDARD

### I. The Federal Rules of Civil Procedure

Under Rule 37, parties who fail to make timely expert disclosures cannot "use that witness or relevant expert information 'to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless.' " *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77 (1st Cir. 2009) (quoting Fed. R. Civ. P. 37(c)(1)). Preclusion "is not a strictly mechanical exercise," and I have broad discretion to "choose a less severe sanction." *Id.* at 77–78 (internal citations omitted).

To determine if preclusion is warranted, I consider factors including (1) the litigation history; (2) the sanctioned party's "need" for the untimely evidence; (3) the sanctioned party's "justification" for its late disclosure; (4) adverse effects on the opponent (*e.g.*, "surprise and prejudice"); and (5) adverse effects on the court's docket. *Id.* at 78.

5

## II. The District of Maine Local Rules

The Local Rules set forth a framework that determines the evidence I consider in evaluating motions for summary judgment. First, the moving party files a statement of material facts, and the opposing party then files a responsive statement that must either "admit, deny or qualify" each of the movant's asserted facts and support any denial or qualification with a record citation. D. Me. Loc. R. 56(c). If the opposing party opts to include "additional facts" in its responsive statement, D. Me. Loc. R. 56(c), the movant may reply to those "additional facts," D. Me. Loc. R. 56(d). The Local Rules provide that if the parties opt to file jointly stipulated facts, those stipulated facts "shall control and take precedence over any conflicting statement of fact filed by any party to the stipulation." D. Me. Loc. R. 56(b).

To determine the scope of the summary judgment record, I deem admitted any fact supported by a record citation and not properly controverted. *See* D. Me. Loc. R. 56(f). To be properly controverted, facts must be denied or qualified, with each denial or qualification supported by a record citation. *See* D. Me. Loc. R. 56(f); *see also, e.g.*, *Dixon-Tribou v. McDonough*, 616 F. Supp. 3d 38, 43 n.2 (D. Me. 2022) ("Facts . . . improperly controverted . . . are deemed admitted."), *aff'd*, 86 F.4th 453 (1st Cir. 2023). I may "disregard any statement of fact not supported by a specific citation," and I have "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." D. Me. Loc. R. 56(f).

ANALYSIS

I.   **The Defendants' Requests to Strike**

The Defendants argue that because the Ettner Supplement is "untimely" and "improper" under Rule 26(e)(2), I should strike the Plaintiffs' fourteen additional facts as a sanction under Rule 37. SMF ¶¶ 31–44. Though I agree that the Ettner Supplement was untimely filed almost five months after the close of discovery,[6] I conclude the circumstances do not warrant the "severe remedy" of preclusion. *See Esposito*, 590 F.3d at 80.

The first and third *Esposito* factors—the litigation history and the Plaintiffs' reasonable justification for their late disclosure—both weigh against preclusion. When the Plaintiffs produced the original Ettner Affidavit, the Defendants had not yet invoked the Psychological Reasons Regulation, so there was no reason for the Plaintiffs or their experts to address the narrow issue of whether gender transition surgeries are performed "primarily for psychological reasons." Moreover, the Plaintiffs did not need to directly challenge the Psychological Reasons Regulation given the scope of their requested injunction, which would preclude the Defendants from enforcing the Statutory Exclusion "through *regulations*, policies[,] or any other means." Am. Compl. at 14 (emphasis added). In addition, the Plaintiffs' late

---

[6]   Federal Rule of Civil Procedure 26 requires supplementation "in a timely manner" upon learning the original disclosure is "incomplete or incorrect" in some "material respect." Fed. R. Civ. P. 26(e)(1)(A). Supplemental expert reports are "timely" if made by the "pretrial disclosures" deadline. Fed. R. Civ. P. 26(e)(2). That deadline is "at least 30 days before trial" unless the court "orders otherwise." Fed. R. Civ. P. 26(a)(3)(B).

   Here, the court "order[ed] otherwise" by setting a discovery deadline of October 27, 2023. Scheduling Order 2 (ECF No. 20). The Defendants filed their cross-motion for summary judgment on February 16, 2024 (ECF No. 44), and the Plaintiffs filed the Ettner Supplement (ECF No. 48-1) and their fourteen additional facts (ECF No. 50) on March 12 and 15, 2024.

disclosure was the result of the Defendants' choice to cite the Psychological Reasons Regulation for the first time[7] in their summary judgment cross-motion. In other words, unlike in cases where courts have precluded untimely evidence as a discovery sanction, "[t]his is not a case of a party repeatedly balking at court-imposed deadlines," "ignor[ing] pre-sanction warnings from the district court," or engaging in "calculated gamesmanship." *Esposito*, 590 F.3d at 79. Nor was the untimely filing a consequence of the Plaintiffs' failure to conduct a timely investigation or act on information readily available during discovery. *Harriman v. Hancock Cnty.*, 627 F.3d 22, 30–31 (1st Cir. 2010) (internal citation omitted).

The fourth and fifth factors also weigh against preclusion because the Plaintiffs' late disclosure was harmless to the Defendants and to this Court's docket. *See Esposito*, 590 F.3d at 79. Because the Plaintiffs filed the Ettner Supplement in response to the Defendants' new standing argument, the Defendants would be hard-pressed to argue the supplemental report was a "surprise." *Esposito*, 590 F.3d at 78. Furthermore, the Ettner Supplement did not prejudice the Defendants by, for example, forcing them to revise their own expert reports. In fact, the Defendants have not filed any such reports, conducted any other discovery,[8] or introduced any of their

---

[7]  The Defendants claim they first "alerted" the Plaintiffs of their "intention to rely on the 'psychological reasons' exclusion" long before moving for summary judgment. SMF ¶ 31; *see also* Defs.' Mot. for Summ. J. 3 (ECF No. 44). The Plaintiffs counter that the Defendants did nothing more than mention during an October 23, 2023 phone call (four days before discovery closed) that the "psychological reasons" provision might "impact the Plaintiffs' ability to obtain relief." SMF ¶ 31. According to the Plaintiffs, the Defendants neither disclosed their intention to cite that regulation at summary judgment nor "provided any notice in writing." SMF ¶ 31. The parties have provided no further information about this alleged phone call.

[8]  *See* SMF ¶ 31 ("The sole discovery in the case was Plaintiffs' request for admissions, which they served on September 22, 2023, and which Defendants responded to on October 27, 2023.").

8

own summary judgment facts, nor did they ask to reopen expert discovery after receiving the supplemental report. Finally, the Ettner Supplement has not "disrupt[ed]" the court's ability to manage its docket. *Harriman*, 627 F.3d at 31. The Plaintiffs did not seek any extensions after the Defendants first cited the Psychological Reasons Regulation but instead promptly filed the Ettner Supplement and additional facts without modifying the existing summary judgment schedule.

Finally, the second factor—the Plaintiffs' "need for the . . . evidence," *Esposito*, 590 F.3d at 78—cuts both ways. On the one hand, because Dr. Ettner is one of two Plaintiff experts and because the original Ettner Affidavit is already in the record,[9] this is not a case in which preclusion would "carr[y] the force of a dismissal." *Id.* at 79. On the other hand, striking the Ettner Supplement might compromise the Plaintiffs' ability to counter the Defendants' standing argument, which has the potential to foreclose a decision on the merits. *Id.* at 80 (citing *Malot v. Dorado Beach Cottages Assocs.*, 478 F.3d 40, 43 (1st Cir. 2007) (recognizing "the strong presumption in favor of deciding cases on the merits")). On balance, I find the Plaintiffs' "need for the evidence" weighs against precluding the untimely evidence.

---

[9] Notably, the original Ettner Affidavit contains several assertions relevant to the Plaintiffs' argument that gender dysphoria is not performed "for psychological reasons." *See* Ettner Aff. ¶ 14 (discussing the "genetic and hormonal contributions to Gender Dysphoria"); *id.* ¶ 15 ("There is now a scientific consensus that gender identity is biologically based and . . . that Gender Dysphoria has a physiological and biological etiology."); *id.* ¶ 16 (referring to studies finding "a co-occurrence of gender dysphoria in families"); *id.* ¶ 17 ("It is now believed that Gender Dysphoria evolves as a result of the interaction of the developing brain and sex hormones.").

## II. The Defendants' Other Objections to the Plaintiffs' Material Facts

Having resolved the Defendants' requests to strike, I now consider the effect of the Defendants' various qualifications and denials of the Plaintiffs' asserted facts under the Local Rules. *See* D. Me. Loc. R. 56(c), (f).

### A. Improper "Qualifications"

The Defendants attempt to "qualify" multiple facts asserted by the Plaintiffs, including, for example, the following assertion: "There is a scientific consensus that gender identity is biologically based and a significant body of medical research that gender dysphoria has a physical and biological etiology." SMF ¶ 32.

A proper qualification should either "offer record citations that show that the statement must be modified . . . to be accurate" or otherwise "explain why such citations are not available." *Loder v. Me. Intel. Analysis Ctr.*, No. 2:20-cv-00157-JDL, 2022 WL 3369255, at *3 (D. Me. Aug. 11, 2022) (internal citation omitted). Here, the Defendants do not explain why the Plaintiffs' statement "must be modified" and instead merely recite a stipulated fact that is not obviously on point. *See* Stip. ¶ 18 (defining gender dysphoria in terms of "clinically significant distress or impairments in functioning resulting from the lack of congruence between . . . gender identity and sex . . ."). In effect, the Defendants seem to ask me to strike the Plaintiffs' assertion to the extent it exceeds the scope of the Stipulated Facts. But they neither explain why the Plaintiffs' fact is inaccurate nor offer a record citation to support their proposed modification.

The Stipulated Facts might provide a basis for modifying the Plaintiffs' facts if there were a "conflict[ ]" between the two. *See* D. Me. Loc. R. 56(b) ("[S]tipulated facts

10

shall control and take precedence over any conflicting statement of fact filed by any party to the stipulation."); *Handler v. Mayhew*, No. 1:11-cv-00308-JAW, 2013 WL 6858881, at *7 n.40 (D. Me. Dec. 30, 2013) ("Once a party agrees to a stipulated fact, he may not contradict that fact in his own statement of facts."). But in this case, the Plaintiffs' assertion—that gender identity is "biologically based" and that gender dysphoria has a "biological etiology," SMF ¶ 32—is not obviously inconsistent with the parties' stipulation that gender dysphoria results from "an incongruence between gender identity and . . . birth sex," Stip. ¶ 18. Because it is at least "unclear whether there is a conflict," I deny the Defendants' proposed qualification, which I construe as a request to strike. *U.S. Equal Emp. Opportunity Comm'n v. Wal-Mart Stores, Inc.*, No. 1:18-cv-00170-JDL, 2019 WL 3805343, at *3 (D. Me. Aug. 13, 2019) (denying a request to strike a fact where it was "unclear whether there [was] a conflict" with a stipulated fact).

Accordingly, this fact is deemed admitted, as are all other facts asserted by the Plaintiffs that the Defendants have ineffectively sought to "qualify." *See* SMF ¶¶ 1–4, 8–11, 14, 31–41, 44 (improper "qualifications" citing consistent statements from the Stipulated Facts); SMF ¶ 12 (improper "qualification" with no record citation); SMF ¶ 20 (improper "qualifications" citing consistent statements from the Defendants' answer to the Plaintiffs' Amended Complaint); SMF ¶¶ 42–43 (improper "qualifications" that "admit the substance . . . but assert that the statements" are not material).

11

### B. Improper Denials

The Defendants attempt to "deny" multiple statements in the Plaintiffs' asserted facts that they contend contradict other record evidence. For example, the Plaintiffs assert that "[t]here is no recognized or effective psychiatric or psychological treatment for gender dysphoria," and they cite the Ettner Supplement as record support. SMF ¶ 36. The Defendants "deny" some statements from that assertion "to the extent they contradict" the original Ettner Affidavit—specifically, they deny the statements that Dr. Ettner is a "licensed clinical and forensic psychologist" who has "evaluated, diagnosed, and *treated* over 3,000 individuals with gender dysphoria," and that "[p]sychotherapy" is among the "evidence-based care" recommended for treating gender dysphoria. SMF ¶ 36 (emphasis and brackets in original).

I disagree with the Defendants and find that these assertions from the original Ettner Affidavit are consistent with the proposition that "[t]here is no recognized or effective psychiatric or psychological treatment for gender dysphoria." SMF ¶ 36. As clarified by the Ettner Supplement, "[c]ounseling or medications may . . . help an individual cope with . . . gender dysphoria," but "[n]either psychotherapy nor medication cure or ameliorate the underlying medical condition." Ettner Suppl. ¶ 4. Accordingly, SMF ¶ 36 is deemed admitted, as is SMF ¶ 34, which the Defendants "deny" for similar reasons.

### C. "Lack Sufficient Information"

The Defendants respond that they "lack sufficient information to admit or deny" several of the Plaintiffs' facts. These responses are improper because the Plaintiffs' assertions have proper record citations. *See* D. Me. Loc. R. 56(b); *see also*

12

*Tucker v. Lantmännen Unibake USA, Inc.*, No. 2:21-cv-00087-JAW, 2023 WL 8653439, at *4 (D. Me. Dec. 14, 2023) ("[T]he First Circuit has repeatedly held that a 'party's own affidavit, containing relevant information of which [s]he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment.' ") (quoting *Velázquez-García v. Horizon Lines of P.R., Inc.*, 473 F.3d 11, 18 (1st Cir. 2007)). The Local Rules do not permit the Defendants to create a genuine issue of fact by denying statements that are both undisputed and supported by sufficient evidence merely by asserting the Defendants "lack sufficient information." *Burnett v. Ocean Props., Ltd.*, 327 F. Supp. 3d 198, 215 n.54 (D. Me. 2018) (citing *Chapman v. Finnegan*, 950 F. Supp. 2d 285, 292 (D. Mass. 2013)).

Accordingly, all facts that the Defendants claim to "lack sufficient information to admit or deny" are deemed admitted. *See* SMF ¶¶ 17–19, 21–28, 30–33, 38–40, 44.

## CONCLUSION

For these reasons, I **DENY** the Defendants' requests to strike the Plaintiffs' additional facts and deem admitted all facts that the Defendants have not properly controverted as required by the Local Rules.

SO ORDERED.

/s/ Nancy Torresen  
United States District Judge

Dated this 1st day of November, 2024.