IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JANE DOE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> LLOYD J. AUSTIN, III, in his official capacity as Secretary of Defense, *et al.*, <br><br> *Defendants*. | Case No.: 2:22-cv-00368-NT <br><br> **Oral argument requested** |

**MOTION OF THE U.S. HOUSE OF REPRESENTATIVES TO INTERVENE
WITH INCORPORATED MEMORANDUM OF LAW**

The U.S. House of Representatives (House)[1] respectfully moves to intervene under Rule 24 of the Federal Rules of Civil Procedure. The House seeks intervention as of right under Rule 24(a)(2), or in the alternative, permissive intervention under Rule 24(b)(1)(B). If the Court grants this motion, the House will, at a minimum, appeal this Court's decision (ECF No. 58) granting in part Plaintiffs' motion for summary judgment and denying in part Defendants' motion for summary judgment (ECF Nos. 36, 46) after the Court enters judgment. The House also would like to brief merits issues (which Defendants refused to brief) in front of this Court before or after it enters judgment. As a courtesy, the House notified the parties that it planned to file this motion.

---

[1] The House's Bipartisan Legal Advisory Group (BLAG) has authorized the filing of this motion. BLAG comprises the Honorable Mike Johnson, Speaker of the House, the Honorable Steve Scalise, Majority Leader, the Honorable Tom Emmer, Majority Whip, the Honorable Hakeem Jeffries, Minority Leader, and the Honorable Katherine Clark, Minority Whip, and it "speaks for, and articulates the institutional position of, the House in all litigation matters." Rule II.8(b), Rules of the U.S. House of Representatives, 118th Cong. (2023), https://perma.cc/DK3P-55K6. The Speaker of the House, the Majority Leader, and the Majority Whip voted to support the filing of this motion; the Minority Leader and Minority Whip did not.

**INTRODUCTION**

For nearly two years, the Department of Justice (DOJ) has halfheartedly defended the constitutionality of the federal statute at issue. As this Court put it, DOJ "ma[de] only technical and procedural objections … and d[id] not engage with the merits." ECF No. 58 at 27. Now that the Court has rejected the limited arguments DOJ did assert, and ruled in Plaintiffs' favor on the merits (essentially a foregone conclusion given DOJ's failure to substantively defend the statute), DOJ's position appears to be that this litigation may be resolved via settlement. *See* ECF No. 59. DOJ's lukewarm defense appears to have become a full-blown abandonment of its duty to defend the constitutionality of federal law in this case.

DOJ is statutorily obligated to notify the House when it decides not to appeal a judicial decision that adversely affects the constitutionality of a federal statute. *See* 28 U.S.C. § 530D(a)(1)(B)(ii), (a)(2)(B)-(D); *see also id.* (imposing the same obligation when DOJ refuses to defend the constitutionality of a federal statute). Typically, after a district court concludes that a statute violates the Constitution and DOJ decides not to appeal, it notifies the House, which can then intervene to appeal and defend the statute. Here, the parties' latest filing (ECF No. 59) gives the House strong reason to believe that DOJ does not intend to appeal this Court's decision.

The House thus moves to intervene to defend the statute that DOJ has signaled in this case it no longer will. The statute deals with a government-funded health care benefits program (TRICARE) for "members and former members of the uniformed services and their dependents." 10 U.S.C. § 1072(7). It generally prevents TRICARE from covering any surgery (for dependents) that "improves physical appearance" without "significantly restor[ing] functions," including "sex gender changes." *Id.* § 1079(a)(11). Plaintiffs allege that the statutory exclusion of surgery for "sex gender changes" violates their equal protection rights, and they brought both facial and as-applied challenges. DOJ offered the barest of defenses on cross-motions for summary judgment. It raised a threshold standing argument

2

but did not defend the merits of the statute. Instead, it embraced Plaintiffs' reading of the statute and said that (constitutional) reading overcame Plaintiffs' facial challenge. DOJ further argued that Plaintiffs' as-applied challenge must fail because they did not challenge an implementing regulation. Thus, when the Court considered whether the statute satisfies the relevant tier of scrutiny, it had to rule in Plaintiffs' favor on their as-applied challenge. After all, DOJ failed to offer a *single* government interest that the statute furthered. Now, rather than formally deciding not to appeal (and notifying the House), DOJ has indicated that it is attempting to settle the case. Doing so would presumably leave this Court's adverse decision on the books, and that decision could bring particular harm to the House: there is a TRICARE provision raising issues similar to the statutory exclusion that is included in a bill that passed the House on December 10 and will likely be signed into law by the end of the year.

It is therefore critical that the House intervene and defend the statute by, at a minimum, seeking appellate review. Courts have routinely granted motions to intervene filed by one or both houses of Congress when DOJ has declined to defend the constitutionality of federal statutes.[2] This Court should do the same. The House satisfies the requirements for mandatory intervention because: (1) it is filing four days after discovering DOJ's apparent abandonment of its defense, meaning its motion is timely; (2) it has a significant legal interest in defending the constitutionality of the legislation it passes (and here, it's protecting the public fisc by doing so), meaning it has an interest related to the ongoing case; (3) that interest will be impaired without intervention because DOJ is apparently no longer defending the law in this case; and (4) no party adequately represents that interest because, again, apparently no party is defending the statute. At a minimum, the House is entitled to permissive intervention. The Court should thus grant the House's motion and allow it to defend the statute.

---

[2] *See, e.g.*, Order, *Texas v. United States*, No. 19-10011 (5th Cir. Feb. 14, 2019); *Adolph Coors Co. v. Brady*, 944 F.2d 1543, 1546 (10th Cir. 1991); *In re Koerner*, 800 F.2d 1358, 1360 (5th Cir. 1986); *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 880, 888 (3d Cir. 1986); *Synar v. United States*, 626 F. Supp. 1374, 1378-79 (D.D.C. 1986), *aff'd sub nom. Bowsher v. Synar*, 478 U.S. 714 (1986).

3

**ARGUMENT**

**I.     The House has a right to intervene**

The Court "must permit" a party to intervene under Rule 24(a)(2) when it satisfies four requirements: (1)"its motion is timely"; (2) "it has an interest relating to the property or transaction that forms the foundation of the ongoing action"; (3) "the disposition of the action threatens to impair or impede its ability to protect this interest"; and (4) "no existing party adequately represents its interest." *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011). The House does so here.

**1.** The House's motion is timely. It moved just four days after learning that DOJ was pursuing settlement instead of continuing to defend the statute (which is twenty-eight days after DOJ notified the Court). This satisfies the timeliness requirement under these circumstances. *See Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992) (explaining that "[t]here is no bright-line rule delineating when a motion to intervene is or is not timeous" and that courts must "examin[e] the totality of the relevant circumstances"). The First Circuit looks to four factors when considering timeliness. *See id.* at 1231.

The first factor (how long "the applicant knew or reasonably should have known that its interest was imperilled before" moving, *id.*) requires that the applicant "act reasonably promptly" after "gain[ing] some actual knowledge that a measurable risk exists." *See id.* Four days is reasonably promptly. *Cf. Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 64-65 (1st Cir. 2008) (motion was timely when filed more than one month after the intervenor knew her interests were imperiled); *Fiandaca v. Cunningham*, 827 F.2d 825, 834 (1st Cir. 1987) (motion filed after trial but before judgment was timely when a party that "had no inherent interest … at the outset"—whose "interest … arose rather late in the day, and only as a matter of chance"—filed a few days after learning their interests were implicated). Indeed, this is eminently reasonable where, as here, DOJ may be evading its statutory reporting obligation, which is designed to allow the House to satisfy the timeliness requirement when it wishes

4

to intervene to defend a federal statute. *See* 28 U.S.C. § 530D(b)(2) (report shall be sent "within such time as will reasonably enable the House … to take action … to intervene in timely fashion").

The second factor ("foreseeable prejudice to existing parties if intervention is granted," *Greenblatt*, 964 F.2d at 1231) favors intervention because the federal government's appeal of a district court decision that finds a statute unconstitutional is a routine part of the litigation process. Thus, no party will be "unduly prejudiced," *cf. Fiandaca*, 827 F.2d at 835. To be sure, settlement discussions may be postponed (and never revisited if the House prevails), but that will not unfairly prejudice any party, either. Those discussions are ongoing solely because DOJ apparently does not want to defend the statute by appealing this Court's adverse decision. Simply allowing the standard litigation process, which includes a right to appeal, to play out does not unfairly harm either party.

The third factor ("foreseeable prejudice to the applicant if intervention is denied," *Greenblatt*, 964 F.2d at 1231) favors intervention because the House has a "significant probability of success" on appeal, *id.* at 1232. The reasons the Court gave for rejecting DOJ's standing argument were largely not briefed by the parties. If those arguments are fully tested through the adversarial process, the First Circuit may well reach a different conclusion. *Cf. Montana v. Hall*, 481 U.S. 400, 408 (1987) (Marshall, J., dissenting) ("To reduce the incidence of mistakes …, our decisions … should be made only after we have had an opportunity to consider comprehensive briefs and review the records in their entirety."). And if the Court allows the House to brief merits issues that DOJ refused to address, there is a significant possibility that the House would prevail. After all, Plaintiffs prevailed on the merits because DOJ failed to "identif[y] a single governmental interest" to justify the statute. *See* ECF No. 58 at 27. Faced with a robust defense of the statute, Plaintiffs' odds of success are much lower.

The fourth factor ("idiocratic circumstances," *Greenblatt*, 964 F.2d at 1231) favors intervention. DOJ has signaled that it will not continue to defend the statute in this case after the Court concluded that it is unconstitutional as applied to Plaintiffs. And with DOJ pursuing settlement without notifying

the House, the House risks being effectively cut out of the statutory process that allows it to decide whether to intervene to defend a duly enacted statute. Even so, the House still filed its motion before the Court entered judgment and before the parties have notified the Court that they have reached a settlement. This is, to put it mildly, an unusual situation. But the House finds itself in this situation because DOJ appears to be abandoning its defense of the statute here at the last minute, after the Court ruled in Plaintiffs' favor. The House is thus intervening to fill a void and play a role that our adversarial process necessarily depends upon: defending a challenge to the constitutionality of a federal statute, a role that DOJ generally fills. These unique facts strongly support intervention.

**2.** The House has a substantial legal interest in the case: an interest in defending the constitutionality of a statute that it passed when the Executive Branch declines to do so. *See INS v. Chadha*, 462 U.S. 919, 940 (1983) (explaining that the Supreme Court has "long held that Congress is the proper party to defend the validity of a [federal] statute" when the agency "charged with enforcing the statute" agrees with the party challenging the statute that it is unconstitutional); *Revelis v. Napolitano*, 844 F. Supp. 2d 915, 924-25 (N.D. Ill. 2012) ("The House has an interest in defending the constitutionality of legislation which it passed when the executive branch declines to do so."); *United States v. Windsor*, 570 U.S. 744, 804 (2013) (Alito, J., dissenting) (referring to the House's "interests in this matter"); *Ameron*, 787 F.2d at 888 n.8 (affirming that "Congress has standing to intervene whenever the executive declines to defend a statute").

Here, that interest has concrete—monetary—consequences. By enacting the statute at issue, Congress decided that a taxpayer-funded health care program should not pay for certain procedures. The House is thus protecting the public fisc by defending that law. This Court should thus allow the House to protect this weighty interest, just as other courts have. *See, e.g.*, Order, *Texas v. United States*, No. 19-10011 (5th Cir. Feb. 14, 2019); *Windsor*, 570 U.S. at 754.

6

**3.** Absent intervention, the House's interest in the defense of its duly enacted statutes—a defense ordinarily undertaken by DOJ—will be significantly impaired. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015) (affirming a state legislature's standing to challenge a ballot initiative that "strip[ped] the Legislature of its alleged prerogative to initiate redistricting"); *Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1008 (6th Cir. 2006) (recognizing that "potential *stare decisis* effects can be a sufficient basis for finding an impairment of interest" in the validity of legislation).

The impairment is magnified here for two reasons. *First*, this Court's conclusion that the statutory exclusion violates equal protection as applied to these Plaintiffs could cast doubt on a provision of legislation that Congress is considering and expected to pass soon. Specifically, the National Defense Authorization Act for Fiscal Year 2025 (NDAA), contains a provision that, if enacted, would prevent TRICARE from covering "[m]edical interventions for the treatment of gender dysphoria that could result in sterilization … to a child under the age of 18." H. Amend. to S. Amend. to H.R. 5009, 118th Cong. § 708 (2024).[3] The NDAA, which is reportedly "the result of a bipartisan compromise,"[4] passed the House two days ago[5] and is expected to pass the Senate soon.[6] This Court's decision, which found that the statutory exclusion for "sex gender changes" impermissibly discriminates based on sex, *see* ECF No. 58 at 23-26, implicates the NDAA's language banning coverage of interventions for the treatment of gender dysphoria that could result in the sterilization of a minor. Among other things, some "sex gender change" surgeries may "result in sterilization."

*Second*, not allowing the House to continue the defense of the statute's constitutionality would threaten the separation of powers: DOJ could essentially nullify a Congressional enactment on its own

---

[3] https://perma.cc/QR4A-F8JM.
[4] Annie Grayer et al., *House passes defense policy bill that bans gender-affirming care for transgender children*, CNN (Dec. 11, 2024, 5:09 PM), https://perma.cc/Z8PC-ZGCW.
[5] 170 Cong. Rec. H7099 (daily ed. Dec. 11, 2024).
[6] The Senate will vote on the motion to invoke cloture on the bill on December 16. *See* https://perma.cc/SZH2-F8HR.

initiative, even though it has a right to appeal and powerful arguments may be made in defense of the statute. *Cf. Windsor*, 133 S. Ct. at 2688 ("[I]t poses grave challenges to the separation of powers for the Executive at a particular moment to be able to nullify Congress' enactment solely on its own initiative and without any determination from the Court."). That is why DOJ is required by statute to notify the House of any decision "not to appeal … any judicial … determination adversely affecting the constitutionality" of a federal statute. *See* 28 U.S.C. § 530D(a)(1)(B)(ii). DOJ's sudden willingness to settle does not change the analysis. It still appears to be refusing to defend a statute by leaving an adverse district court decision unchallenged. This impairs the House's interest in seeing its duly enacted laws vigorously defended (just like a DOJ decision not to appeal when it is uninterested in settling does).

**4.** "[N]o existing party adequately represents [the House's] interest" in ensuring that the statute receives a vigorous constitutional defense. *See Ungar*, 634 F.3d at 50. This Court agreed with Plaintiffs and concluded that the statutory exclusion is unconstitutional as applied to them. Rather than continuing to defend the statute by appealing that decision, DOJ apparently wants to settle. Thus, the statute likely will continue to be defended here only if the House's motion is granted.

## II.     Alternatively, the House is entitled to permissive intervention

At a minimum, the House's motion satisfies the standard for permissive intervention under Rule 24(b). Under that Rule, "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). *First*, the motion is timely for the reasons explained above. *Second*, the House's claim that Plaintiffs are not entitled to relief presents questions of law that are common to the main action. Indeed, the House is prepared to renew most of DOJ's arguments on appeal. *Third*, intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As explained above, the House seeks to ensure (not frustrate) a proper determination of the original parties' rights by defending the constitutionality of the statute. Granting its motion is thus

the most effective way to achieve a full and fair resolution of the case. Indeed, doing so will likely allow the court of appeals to consider critical guidance from a Supreme Court case that will inform what level of scrutiny should apply to a statute like § 1079(a)(11) (if it concludes that Plaintiffs have standing).[7]

### III. The House welcomes the chance to brief the merits issues that DOJ refused to brief

The House intends to appeal the Court's decision and is prepared to rely on arguments that DOJ made while briefing the parties' cross-motions for summary judgment. At the same time, the House is eager to provide the Court with, at a minimum, briefing on the governmental interests that the statutory exclusion furthers. As the Court pointed out (ECF No. 58 at 27), "this is not an ordinary case because the Defendants have not identified a single governmental interest to justify the Statutory Exclusion. Their briefing makes only technical and procedural objections to the Plaintiffs' Equal Protection claim and does not engage with the merits." The Supreme Court has cautioned that "[s]triking down an Act of Congress 'is the gravest and most delicate duty that this Court is called on to perform.'" *Shelby Cnty., v. Holder*, 570 U.S. 529, 556 (2013) (citation omitted). This is especially the case here because the statute raises issues similar to a provision in the soon-to-be-passed NDAA. The Court should make such a delicate decision only after the adversarial process has properly played out. As things stand now, the Court has not heard any arguments related to the governmental interests.

The House also hopes to address whether the challenged classification here is based on sex. Although the Court concluded it is, DOJ also provided the Court with no adversarial briefing on that issue, which is percolating in the courts. *See* ECF No. 36 at 24 (heading in Plaintiffs' brief titled "The

---

[7] That case is *United States v. Skrmetti*, No. 23-477 (U.S.), and the question presented is whether a state law that "prohibits all medical treatments intended to allow 'a minor to identify with, or live as, a purported identity inconsistent with the minor's sex' or to treat 'purported discomfort or distress from a discordance between the minor's sex and asserted identity,' violates the Equal Protection Clause of the Fourteenth Amendment." (citation omitted). The Court's opinion will almost certainly address whether that statute relies on a sex-based classification, which will dictate the level of scrutiny that applies. That guidance will, at a minimum, inform how the court of appeals (or this Court on remand) should analyze Plaintiffs' equal protection challenge here.

9

Decisions of the Sixth and Eleventh Circuits Applying Rational Basis Review to Prohibitions of Medical Treatment for Gender Dysphoria Misconstrue Supreme Court Precedent and are Wrong"). (And, again, the Supreme Court's decision in *Skrmetti* will likely offer guidance that informs this analysis.) Given all that, this issue should be tested through the adversarial process upon which the judicial function depends.

If the Court does not enter judgment, it could set a new schedule for briefing cross-motions for summary judgment, which would allow the House to brief these issues. If the Court does enter judgment, the House could move under Rule 59(e) to alter or amend that judgment. If the Court granted that motion, that would also allow the House to make these arguments.

*   *   *

The Court took the weighty step of holding unconstitutional a duly enacted federal statute after briefing where DOJ pulled its punches and did not make a good-faith attempt to substantively defend the statute's constitutionality. Now, DOJ appears to be abandoning any attempt to contest that decision. The Court should not countenance these machinations. It should instead allow the House to continue defending the constitutionality of the American people's elected representatives' decision to restrict TRICARE's coverage of surgery for "sex gender changes."

## CONCLUSION

For these reasons, the Court should grant the House's motion to intervene. If the parties request a Court order dismissing the case before the Court rules on this motion, the House respectfully asks the Court to hold that request in abeyance pending its decision on the House's intervention motion. The House is prepared to separately move for such relief if it is necessary to do so.

        Respectfully submitted,

        */s/ Matthew B. Berry*
        Matthew B. Berry (D.C. Bar No. 1002470)
           *General Counsel*
        Todd B. Tatelman (VA Bar No. 66008)
           *Deputy General Counsel*
        Bradley Craigmyle (IL Bar No. 6326760)
           *Associate General Counsel*

        OFFICE OF GENERAL COUNSEL
        U.S. HOUSE OF REPRESENTATIVES
        5140 O'Neill House Office Building
        Washington, D.C. 20515
        (202) 225-9700
        Matthew.Berry@mail.house.gov

        *Counsel for the U.S. House of Representatives*

December 13, 2024