## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JANE DOE and SUSAN ROE,<br><br>*Plaintiffs*,<br><br>v.<br><br>LLOYD J. AUSTIN, III, in his official capacity as Secretary of Defense; the U.S. DEPARTMENT OF DEFENSE; the U.S. DEFENSE HEALTH AGENCY; and the TRICARE HEALTH PLAN,<br><br>*Defendants*. | Civil Action No.: 2:22-cv-00368-NT |

## DEFENDANTS' OPPOSITION TO THE U.S. HOUSE OF REPRESENTATIVES' MOTION TO INTERVENE WITH INCORPORATED MEMORANDUM OF LAW

The U.S. House of Representatives ("House") seeks untimely intervention into a case that has already been fully resolved. The Court should deny the House's meritless Motion for multiple reasons. As a threshold matter, the Court lacks subject matter jurisdiction to grant intervention. Because there is no active litigation into which the House can intervene, the Motion is moot. On top of that, the House lacks standing to assert Congress's interests as a single house of a bicameral legislature.

But even if the House's Motion were properly before this Court, it should be denied because the House has failed to show that either intervention as of right or permissive intervention is appropriate. First, the Motion is untimely. The parties have litigated this case for over two years, have gone through full discovery, and completed summary judgment briefing months ago. While the House claims to disagree with Defendants' summary judgment strategy in this case, it sat silent until now. And to the extent the House takes issue with the parties' more recent efforts to settle this case before final judgment, those concerns are unfounded—the only thing the parties agreed was that this case would be dismissed. There was no separate settlement agreement, much less any monetary or equitable relief provided to Plaintiffs. *See* Decl. of Emily B. Nestler, ¶¶ 4–5.

Second, the House has no legally cognizable interest that needs protecting through further litigation. While the House asserts that DOJ has failed to defend a statutory exclusion for health care

coverage, that claim is baseless. Defendants have defended this case zealously throughout, including by seeking summary judgment as to all of Plaintiffs' claims. Defendants' advocacy, in fact, resulted in a ruling that the statute is facially constitutional. While the Court concluded that the statute was unconstitutional as applied to Plaintiffs, the Court did not enter a final judgment granting any relief on those claims before dismissal. In other words, the statute remains intact and there is no potential for equitable or monetary relief in connection with Plaintiffs' as-applied claims. Under these circumstances, Defendants adequately represented any interest the House might have, and regardless, there is simply no case or controversy left for the House to litigate. Finally, the House's sparse submission fails to lay out a colorable defense, such that the Court could find there is some merit to the legal theory that the House claims it would advance.

Accordingly, the House's Motion should be denied.

## BACKGROUND

In November 2022, Plaintiffs filed this now-dismissed suit to challenge a statutory limit on the scope of health care services available to the dependents of active duty and former servicemembers under TRICARE, the United States military's health care program. Doc. 1. Plaintiffs Jane Doe and Susan Roe are adult transgender women. *See* Doc. 34-4 ¶ 2 (Jane Doe is "22 years old."); Doc. 34-5 ¶ 2 (Susan Roe is "21 years old."). Plaintiffs intended to seek TRICARE coverage for future, planned gender transition surgeries. Plaintiffs contended, however, that a TRICARE statutory exclusion barred this coverage. *See* 10 U.S.C. § 1079(a)(11). They claimed that this exclusion violated the Fifth Amendment's equal protection guarantee, alleging that it discriminated on the basis of sex and transgender status, facially and as applied. *See* Doc. 58 at 21–28. Plaintiffs sought, among other things, a permanent injunction, damages, and attorneys' fees. Doc. 5 at 13–14.

Following six months of discovery, Doc. 20, Plaintiffs moved for summary judgment on December 21, 2023, Doc. 36. Defendants opposed and cross-moved for summary judgment on February 16, 2024. Doc. 44. Defendants sought full dismissal of Plaintiffs' claims. *See id.* at 10–11.

On November 1, 2024, the Court issued an opinion on these motions. Doc. 58 ("Summary Judgment Opinion"). After finding that Plaintiffs had standing, *id.* at 18, the Court held that Plaintiffs'

facial challenge failed, *id.* at 22. Then, after weighing conflicting authority, the Court held that intermediate scrutiny applied, and found for Plaintiffs on their as-applied claims. *Id.* at 26–28 & n.22. Although the Court indicated it intended to enter declaratory relief for Plaintiffs, the Court ordered the parties to confer on "whether injunctive relief is necessary and, if so, provide a proposed injunction." *Id.* at 28. The Court's order, thus, did not fully resolve Plaintiffs' claims for relief, and the Court did not enter a final judgment. *See* Fed. R. Civ. P. 58; *see also* Doc. 65.

On November 15, the parties reported that "all remaining issues in this case" might be amenable to settlement. Doc. 59 at 1–2. The House's Motion came on December 13. On December 20, the parties filed a stipulation for dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii). Doc. 65. The stipulation of dismissal was the parties' only agreement; there was no settlement agreement. Plaintiffs received no monetary or equitable relief in connection with this case, whether in exchange for dismissal or otherwise. *See* Nestler Decl., ¶¶ 4–5.

## ARGUMENT

### I.    The Court Lacks Jurisdiction Over the House's Motion.

After the original plaintiffs and defendants in a case end their dispute, a third party cannot "continue" a litigation as an intervenor-defendant without "a showing" that there is Article III subject matter jurisdiction. *Diamond v. Charles*, 476 U.S. 54, 68–69 (1986); *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 65 (1997). The House does not make that showing.

#### A.    The House's Motion Is Moot.

"Courts have generally held" that a stipulation of dismissal ends subject-matter jurisdiction and "moots an outstanding and undecided motion to intervene." *Dalglish v. Eldredge Lumber & Hardware, Inc.*, 2021 WL 5567423, at *2 (D. Me. Nov. 29, 2021). A Rule 41(a)(1)(A) stipulation is "effective upon filing" and acts to dismiss a case without a court order. *Id.* at *1–2.

To the extent courts have decided that intervention should be granted after dismissal in some rare cases cited by the House, *see* Doc. 66 at 2–3, those decisions dealt with circumstances not present here—*i.e.*, class actions, intervenor-*plaintiffs* pursuing relief, or review of an order denying intervention that was entered *before* a litigation was dismissed, *see* Doc. 67 at 3–5 (distinguishing cases). By contrast,

the House seeks to intervene in this case as a *defendant*, notwithstanding the fact that there is no longer any remaining claim for relief that could give rise to a case or controversy. Thus, "there is no action in which to intervene," and the House's Motion is "moot." *Mut. Produce, Inc. v. Penn Cent. Transp. Co.*, 119 F.R.D. 619, 621 (D. Mass. 1988) (citation omitted).

**B.    The House Lacks Standing As A Single House Of A Bicameral Legislature.**

The House lacks standing in this case, and thus, is not a proper intervenor.[1] "[A] single House of a bicameral legislature lacks capacity to assert interests belonging to the legislature as a whole." *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 667 (2019) (ruling that single House of Virginia legislature lacked Article III standing to defend a Virginia statute); *Newdow v. U.S. Cong.*, 313 F.3d 495, 499–500 (9th Cir. 2002) (denying the Senate's motion to intervene to defend constitutionality of Act of Congress because "[a] public law, after enactment, is not the Senate's any more than it is the law of any other citizen or group of citizens in the United States."). Congress as a whole shares the power to enact legislation, and the Senate has not sought to intervene.

Notably, the House cites no binding authority holding that a single House of Congress has a right to intervene to defend a statute. The House cites dissenting opinions in *United States v. Windsor*, but fails to acknowledge that the *Windsor* majority did not decide whether the House alone "would have standing." 570 U.S. 744, 761–62 (2013). The House also repeatedly cites the Fifth Circuit's order in *Texas v. United States*, No. 19-10011 (5th Cir. Feb. 14, 2019). Yet the Fifth Circuit did not hold that the House could intervene as of right; it instead described that claim as "questionable." *Id.* And while the House cites authority holding that "Congress is the proper party to defend the validity of a statute when an agency of government . . . agrees with plaintiffs that the statute is inapplicable or unconstitutional," *Immigr. & Naturalization Serv. v. Chadha*, 462 U.S. 919, 940 (1983), the House omits

---

[1] "[N]either the Supreme Court nor the First Circuit has expressly decided whether the 'interest' referred to in Rule 24(a) requires a proposed intervenor to possess Article III standing." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 48 n.4 (D. Mass.), *aff'd*, 807 F.3d 472 (1st Cir. 2015) (citations omitted). Regardless of whether these concepts are identical, the First Circuit has suggested that an intervenor could demonstrate a Rule 24(a) interest without possessing Article III standing only in "unusual" cases involving "peculiar circumstances." *Id.* (citation omitted).

the sentence right before that quote, which noted that "both Houses of Congress" had intervened in that case. *Id.* & n.5. Many other cases cited by the House are distinguishable on the same grounds.[2]

The other out-of-circuit dicta cited by the House should not persuade the Court. The Supreme Court cautions against reliance on even its own "drive-by jurisdictional ruling[s]," *Wilkins v. United States*, 598 U.S. 152, 160–61 (2023) (cleaned up), and courts must "vigilantly" and "carefully" police the bounds of their subject matter jurisdiction, *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP*, 362 F.3d 136, 139 (1st Cir. 2004). The House cites no reasoned analysis[3] that could justify ignoring *Bethune-Hill*. *See Newdow*, 313 F.3d at 498 (distinguishing cases in which "Senate intervention ha[d] been allowed without any particular remark or detailed consideration").

## II.    Plaintiffs' Motion to Intervene Fails on the Merits.

Even if the House's Motion were properly before this Court, it should be denied on the merits. Intervention as of right under Rule 24(a) requires a would-be intervenor to show: (1) "its motion is timely"; (2) it has "an interest . . . that forms the foundation of the ongoing action"; (3) how "the disposition of the action threatens to impair or impede its ability to protect this interest"; and (4) that "no existing party adequately represents its interest." *Ungar v. Arafat*, 634 F.3d 46, 51 (1st Cir. 2011).

Under permissive intervention, a court may allow any party who "has a claim or defense that shares with the main action a common question of law or fact" to intervene. Fed. R. Civ. P. 24(b)(1)(B). But, while a court's discretion is "very broad," courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020) (citations and quotation marks omitted).

And for both forms of intervention, Rule 24(c) requires a movant seeking to intervene as a defendant to show that there is a "colorable defense" left to be raised, one that has "some merit."

---

[2] *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 802 (2015) (action by "both [] chambers"); *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 880 (3d Cir. 1986) (House and Senate intervened); *Matter of Koerner*, 800 F.2d 1358, 1360 (5th Cir. 1986) (same); *Synar v. United States*, 626 F. Supp. 1374, 1378–79 (D.D.C. 1986) (same).

[3] *See Adolph Coors Co. v. Brady*, 944 F.2d 1543, 1546 (10th Cir. 1991) (passing reference to House's intervention). *Revelis v. Napolitano* involved some analysis, but it preceded the rule in *Bethune-Hill*. 844 F. Supp. 2d 915, 924–25 (N.D. Ill. 2012).

*Rhode Island Fed'n of Tchrs., AFL-CIO v. Norberg*, 630 F.2d 850, 854–55 (1st Cir. 1980). The House fails each of these tests because intervention into this fully resolved case would prejudice the parties, while serving no cognizable countervailing interest. Intervention should therefore be denied.

**A.      The House Cannot Intervene As Of Right.**

The House fails each requirement of Rule 24(a)(2), and "failure to satisfy any one of them defeats intervention as of right." *Arafat*, 634 F.3d at 51.

1.      <u>The House's Motion Is Untimely.</u>

The eleventh-hour Motion is untimely. Courts should "prevent last minute disruption of painstaking work by the parties and the [C]ourt." *Culbreath v. Dukakis*, 630 F.2d 15, 22 (1st Cir. 1980) (citation omitted). "The more advanced the litigation, the more searching the scrutiny[.]" *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992). And "the timeliness requirement retains considerable bite." *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 8 (1st Cir. 2009). Four factors are relevant to timeliness. First, courts look to "the length of time that the [movant] knew or reasonably should have known that his interests were at risk" before acting. *Id.* at 7. Second, courts assess "the prejudice to existing parties" that intervention might cause. *Id.* Third, courts consider "the prejudice to the [movant] should intervention be denied." *Id.* And fourth, courts examine "any special circumstances militating for or against intervention." *Id.*

All of these factors weigh against intervention. The House was on constructive notice of Defendants' summary judgment strategy *at least* ten months ago. The First Circuit has confirmed that a prospective intervenor's "constructive notice" of "a pending case" that "threatens to jeopardize his rights" starts the clock for intervention. *Id.* at 8. "Perfect knowledge of the particulars . . . is not essential[.]" *Id.* Here, the House is a "sophisticated" litigant, *id.* at 10, with demonstrable motive and ability to closely monitor filings in this matter—the House claims it leapt into action after reading a *joint status report*. Mot. at 2 (citing Doc. 59). The House (conspicuously) does not describe when it first became aware of this case or of Defendants' summary judgment arguments. Yet the House attacks how Defendants have "defended the constitutionality" of § 1079(a)(11) over "nearly two years," and claims prejudice from Defendants' summary judgment strategy. *Id.* at 1–3. In these

circumstances, the Court should find that the House had constructive notice of its alleged concerns at least once Defendants filed their summary judgment briefing in February 2024. Doc. 44.

The House's delay is "inexcusable." *R & G Mortg. Corp.*, 584 F.3d at 8–9 (motion was untimely two and a half months after constructive notice). The House did not act diligently and attempt to join the parties' summary judgment briefing, when the parties and the Court could have addressed the House's arguments. Intervention now would, thus, waste much prior effort, only to embroil the parties and the Court in a case without a live controversy. *See Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 26 (1st Cir. 1990) (intervention "would [] negate the preparation and time spent . . . on [] motions for dismissal and/or summary judgment"). While the House argues that timeliness should be measured from the date it "learned that DOJ was pursuing settlement instead of continuing to defend the statute," Mot. at 4, that argument is a red herring. *See In re Efron*, 746 F.3d 30, 36 (1st Cir. 2014) (discounting claim that movant "did not realize that his rights were in jeopardy" until he learned of potential settlement). Regardless, the parties never entered a settlement agreement. *See* Nestler Decl., ¶¶ 4–5. Rather, the case was dismissed with prejudice via stipulation, and without any final judgment or relief to Plaintiffs. *Id.* Plus, the challenged statute remains intact. This outcome shows that the Department's zealous advocacy continued to the end. And now, nothing remains to appeal or defend.[4]

Conversely, because the House's Motion is admittedly "aimed at disrupting" the parties' resolution of this case, "the harm that intervention" would cause is "manifest." *R & G Mortg. Corp.*, 584 F.3d at 9. For that reason, post-settlement intervention is "rarely granted." *Id.* at 10; *Greenblatt*, 964 F.2d at 1232 (attacks on settlement "depriv[e] the original litigants of choices that were theirs to make"). Ultimately, Defendants achieved all they (and the House) could have sought in this litigation: there is no adverse judgment against the government, Plaintiffs received no relief, and the challenged statute remains intact. Defendants want to keep that outcome, and the House should too.

---

[4] For these same reasons, the House's speculation that "DOJ may be evading its statutory reporting obligation" is baseless and irrelevant. Mot. at 4-5, 10 (citing 28 U.S.C. § 530D, which requires DOJ to notify Congress when it determines "to refrain (on the grounds that the provision is unconstitutional) from defending or asserting . . . the constitutionality of any provision of any Federal statute . . . or not to appeal . . . any judicial . . . determination adversely affecting the constitutionality of such provision"). In any event, as explained, DOJ has defended the statute here at every step.

2.      Denying Intervention In This Narrow, And Now Dismissed, Case Will Not
        Threaten Any Interest The House May Have.

As detailed above, the House has no standing, and thus no interest to assert in this case. Yet even if the House could clear that hurdle, the House fails to show any threat to its claimed interests.

The Court's Summary Judgment Opinion causes no cognizable harm to the House, and the House can face no harm if Plaintiffs' claims remain dismissed. The House asserts an interest in "protecting the public fisc" by ensuring that TRICARE does not pay for certain medical procedures, Mot. at 6, but nothing in this case eliminated the relevant coverage exclusion or required any payments. Again, the Summary Judgment Opinion dismissed Plaintiffs' facial claims, and, thus, § 1079(a)(11) remains undisturbed. The House has no viable interest with respect to Plaintiffs' as-applied claims either, because the Court entered no judgment as to those claims. *See* Fed. R. Civ. P. 58(a). And now that Plaintiffs have dismissed their claims with prejudice, there is no risk of injunctive relief that would require TRICARE to pay for anything.

Nonetheless, the House invokes two faulty theories to argue that its "interest in the defense of its duly enacted statutes" will be impaired absent intervention. Mot. at 7–8. First, the House contends that the Court's decision on Plaintiffs' as-applied claims "implicates" and "could cast doubt" on a now-enacted[5] legislative provision that bars TRICARE coverage for gender affirming care that could result in the sterilization *of a minor*. Mot. at 7. Putting aside the limited impact of a non-binding decision granting no actual relief to Plaintiffs, the House's argument fails for a clear reason—Plaintiffs are not minors. *See* Doc. 34-4 ¶ 2 (Jane Doe is "22 years old."); Doc. 34-5 ¶ 2 (Susan Roe is "21 years old."). Thus, this Court's decision on summary judgment does not control the legislation to which the House refers. Second, the House argues that if the Court does not grant intervention "DOJ could essentially nullify a Congressional enactment." Mot. at 7–8. That argument makes little sense here, however. The Defendants successfully defended the constitutionality of the statute against Plaintiffs'

---

[5] *See* Press Release, White House, Statement from President Joe Biden on H.R. 5009, Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025 (Dec. 23, 2024) https://www.whitehouse.gov/briefing-room/statements-releases/2024/12/23/statement-from-president-joe-biden-on-h-r-5009-servicemember-quality-of-life-improvement-and-national-defense-authorization-act-for-fiscal-year-2025/.

facial challenge, such that the statute remains intact. Moreover, dismissal of this case without a final judgment and without any relief diffuses any impact of the Court's limited, as-applied decision.

3.    <u>Dismissal Without Relief Refutes Any Claim Of Inadequate Representation.</u>

The House can hardly show inadequate representation where Defendants have already obtained dismissal without any final judgment or relief to Plaintiffs. A "perfect identity of motivational interests between the movant-intervenor and the government" is not "necessary to a finding of adequate representation." *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 562 (1st Cir. 2021); *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 801 (7th Cir. 2019) (representation adequate even if Legislature wanted a "more aggressive litigation position"). When a movant's "ultimate goal" aligns with that of an existing party, "a rebuttable presumption of adequate representation attaches." *Town of Barnstable*, 969 F.3d at 39 (citations omitted). A further presumption applies when a movant "seeks to appear alongside a governmental body in defense of the validity of some official action." *Id.* (citations omitted). Only "a strong affirmative showing" of inadequacy can rebut these presumptions. *Id.* (cleaned up). The House offers nothing like that. The House instead submits "only conclusory arguments," which are "founded entirely on speculation and surmise." *Id.*

Moreover, First Circuit precedent forecloses the House's primary complaint, *i.e.*, that it wishes to make constitutional arguments that the Defendants did not. Mot. at 9–10. "[A] movant-intervenors' interest in making an additional constitutional argument in defense of government action does not render the government's representation inadequate." *Rosenfelt*, 988 F.3d at 562 (citation omitted). Defendants "raised several defenses to the suit" that would have defeated Plaintiffs' claims while the House "would only raise extra constitutional theories not in conflict with [those] defenses[.]" *Id.* Likewise, denial of intervention is proper where a government has "made a strategic and policy choice to defend" a policy "on non-constitutional grounds" by invoking constitutional avoidance. *Id.* at 563. That is what Defendants did here. *See* Summ. J. Op. at 18–20. And raising arguments that courts are "obliged" to consider is not inadequate representation. *Rosenfelt*, 988 F.3d at 563.

**B.     The House Is Not Entitled To Permissive Intervention.**

For similar reasons, the Court should deny permissive intervention in its "very broad" discretion. *Town of Barnstable*, 969 F.3d at 42. As noted below, the House has not "articulate[d] what, if anything," that would add to the "vitality" of Defendants' arguments. *Id.* at 41. The Court is "not obliged to conjure up unpleaded allegations" to fortify the House's conclusory claims. *Id.* (citation omitted). And "undu[e] delay or prejudice" to "the adjudication of the original parties' rights"—which "must" be considered under Rule 24(b)(3)—would result in this now-dismissed case. *Id.* at 40.

**C.     The House Has Not Showed It Could Offer A Colorable Defense.**

Finally, the Court should deny both intervention as of right and permissive intervention under Rule 24(c), based on the House's "failure . . . to state a defense relevant to the challenged statute." *Norberg*, 630 F.2d at 853. "Whether of right or permissive, intervention under Rule 24 is conditioned" upon this requirement. *Id.* at 854; *Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 515 (1st Cir. 2017) (denying intervention solely under Rule 24(c) permitted if there is "prejudice to any party"). Putative intervenors who seek to defend a statute must show they can offer "a colorable defense to [that] statute." *Norberg*, 630 F.2d at 853–54 ("pursu[ing] the legal theory" of a proposed defense, concluding it had "infirm" "constitutional footing" and was "insufficient"). That "burden is justified by" the risk of prejudice and delay on the existing parties. *Id.* at 855.

Here, the House fails to carry its burden. To start, the Court already rejected Plaintiffs' facial challenges to the statute. So, there is no need for further defense on that issue. As to Plaintiffs' as-applied claims, the House simply asserts it could raise a "robust defense" making Plaintiffs' "odds of success [] much lower," without specifying exactly what the House would argue. Doc. 60 at 5. These conclusory statements are not enough for the Court to find that there is "some merit" to a "colorable defense" left on the table, *Norberg*, 630 F.2d at 854–55, much less how those arguments might be "exceedingly persuasive," *United States v. Virginia*, 518 U.S. 515, 533 (1996). And the Court need not "conjure up" arguments on the House's behalf. *See Town of Barnstable*, 969 F.3d at 41.

## CONCLUSION

For the foregoing reasons, the House's Motion to Intervene should be denied.

DATED: January 3, 2025

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

EMILY B. NESTLER
Assistant Director
Civil Division

By: */s/ Emily B. Nestler*
EMILY B. NESTLER
Assistant Director (D.C. Bar #973886)
ZACHARY W. SHERWOOD
Trial Attorney (Indiana Bar No. 37147-49)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Emily.B.Nestler@usdoj.Gov
zachary.w.sherwood@usdoj.gov
(202) 305-0167

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

On January 3, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, District of Maine, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Emily B. Nestler*
EMILY B. NESTLER